IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
LA RÉUNION AÉRIENNE,                )   Civil Action No. 1:05CV01932 (HHK)
                  Plaintiff,        )
      v.                            )
                                    )
SOCIALIST PEOPLE'S LIBYAN           )
ARAB JAMAHIRIYA, et al.,            )
                  Defendants.       )
_____)

**MOTION AND INCORPORATED MEMORANDUM OF LAW FOR AN ORDER DIRECTING ALTERNATIVE MEANS FOR SERVICE OF PROCESS AND FOR AN EXTENSION OF TIME TO COMPLETE SERVICE OF PROCESS**

NOW COMES Plaintiff La Réunion Aérienne, by its undersigned counsel, and hereby moves, pursuant to Rule 7(b)(1) of the Civil Rules of this Court, for an Order pursuant to Rule 4(f)(3) of the Federal Rule of Civil Procedure and 28 U.S.C. § 1608(b)(3)(C) directing that Plaintiff may use alternative means of service of process on the individual named Defendants and the Libyan External Security Organization ("LESO"), and for an Order extending for an additional reasonable period the time for effecting service in the above captioned matter.[1] Plaintiff was previously granted additional time to effect service, but that additional time, which is about to expire, has proven insufficient in view of the difficulties in effecting service in Libya, as described below and in the accompanying Affidavit of Christopher B. Kende.

**BACKGROUND**

---

[1] On May 18, 2006, Arman Dabiri, the attorney of record for Defendants in a related action, *Pugh, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.*, Civil Action No. 1:02-civ-02026-HHK, entered an appearance in this matter on behalf of all Defendants. In their appearance, Defendants do not recite that they waive service and it is unclear whether they do. Thus, Plaintiff was constrained to bring this motion.

This action was filed on September 28, 2005 by the assignee and subrogee of the rights of seven United States citizens who were killed and of the owner of an aircraft that was destroyed on September 19, 1989, in the mid-air explosion of UTA Flight 772 while en route from Brazzaville, Congo to Paris, France. *See* Affidavit of Christopher B. Kende (hereafter "Kende Aff."), attached hereto as Exhibit A, ¶ 3. Plaintiff, who was the insurer of the aircraft, claims entitlement to recover from Defendants all monies it paid as a result of the explosion. *Id.*

It is virtually beyond dispute that Defendants Libya, LESO, Muammar Qadhafi, Abdallah Senoussi, Ahmed Abdallah Elazragh, Ibrahim Naeli, Arbas Musbah, Issa Abdelsalam Shibani and Abdelsalam Hammouda El Ageli personally and intentionally undertook actions that caused the aircraft to explode in mid-air. Kende Aff., ¶ 3. *See Pugh, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.*, Civil Action No. 1:02-civ-02026-HHK (finding that the evidence overwhelmingly establishes these Defendants' culpability and involvement in the bombing of UTA Flight 772). The explosion of the aircraft constituted a premeditated and deliberate act of extrajudicial killing and aircraft sabotage within the meaning of 28 U.S.C. § 1605, which gave rise to various common and statutory causes of action. Kende Aff., ¶ 3.

The nine Defendants, many of whom have been officially designated as terrorists or terrorist sponsors by the United States government, are all situated in Libya. Kende Aff., ¶ 4. Since filing the Complaint, Plaintiff has engaged in costly, diligent and good faith efforts to locate and serve the Defendants. *See Id.*, ¶¶ 5, 8-10, 13. First, as a prerequisite to proper service on any of these Defendants, and consistent with the procedural requirements of the Foreign Sovereign Immunities Act (FSIA), Plaintiff retained a third party translator to translate the Summons, Complaint, Notices of Suit and FSIA into Arabic for service upon Defendants in

Libya. *Id.*, ¶ 9. The translation of the Complaint took in excess of two months, due in great part to the complexities of the case. *Id.*

**Service on the Individual Defendants**

The rules governing service of process on individuals located in foreign countries are set forth in Fed. R. Civ. P. 4(f). Rule 4(f) provides several options. Specifically, service may be performed: (1) by any internationally agreed means such as the Hague Convention (Rule 4(f)(1)); (2) as prescribed by the law of Libya (Rule 4(f)(2)(A)); (3) as directed by the foreign authority in response to a letter rogatory or letter of request (Rule 4(f)(2)(B)); (4) unless prohibited by the law of the foreign country, by (i) delivery to the individual personally of a copy of the summons and the complaint; or (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served (Rule 4(f)(2)(C)); or (5) "by other means not prohibited by international agreement as may be directed by the court" (Rule 4(f)(3)).

In this case, most of the particular means of service set forth in the Rule are either inapplicable on their face, virtually impossible or highly impractical, for such reasons as the lack of any internationally agreed means for service in Libya, or the impossibility of obtaining local counsel willing to serve process on high-ranking Libyan officials. Kende Aff., ¶ 8. Plaintiff therefore attempted to proceed pursuant to Rule 4(f)(2)(C)(ii), which provides for service by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served." Pursuant to this Rule, Plaintiff mailed a package of service materials to the United States District Court for the District of Columbia requesting that the Clerk take the necessary steps to effect service in this matter. *Id.*, ¶ 9. The Court prepared the appropriate materials for mailing, returned them to Plaintiff for the actual mailing to Defendants,

and Plaintiff mailed them on February 16, 2006, return receipt requested. *Id.* However, receipt has never been acknowledged. *Id.* Since the return of a signed receipt is a requirement for service of process under this Rule, this method of service proved unavailing. *Id.*

Plaintiff therefore initiated the time-consuming process of serving the individual Defendants under Rule 4(f)(2)(A), by letters rogatory. Kende Aff., ¶ 10. After unsuccessful attempts to procure local counsel in late March and April, Plaintiff retained APS International/Civil Action Group, a company that specializes in the international service of process, on May 12, 2006. *Id.* APS International has advised that Libya likely required triple certification of the letters rogatory, which involves the District Judge signing the documents, the Clerk acknowledging that the Judge is the Judge, and the Judge acknowledging that the Clerk is the Clerk, and/or chain authentication, which involves the Department of Justice authenticating the seal of the District Court, the Department of State authenticating the seal of the Department of Justice, and the Libya Liaison Office authenticating the seal of the Department of State. *Id.*[2] Plaintiffs have initiated both of these processes, *Id.*, but they are not yet complete and, in any event, such certification and authentication are only a prelude to service of the letters rogatory, which itself is an extremely time-consuming process and which requires the questionable cooperation of Libyan governmental authorities. *See* Department of State website at http://travel.state.gov/law/info/judicial;/judicial_683.html ("Letters rogatory are a time consuming, cumbersome process and should not be utilized unless there are no other options available").

Thus, Plaintiff requires additional time to complete service of process by means of letters rogatory.

---

[2] APS International also advised that there appears to be no precedent for the service of letters rogatory in Libya. Kende Aff., ¶ 10.

**Service on Libya**

Libya and LESO cannot be served pursuant to Fed. R. Civ. P. 4(f), which applies only to individual persons, but must be served by different means, namely, one of the means prescribed by 28 U.S.C. § 1608 (*see* Fed. R. Civ. P. 4(j)). Under Section 1608(a), service may be made upon a foreign state or political subdivision of a foreign state (*i.e.*, Libya), by (1) delivery of a copy of the summons and complaint in accordance with any arrangement for service of process in the foreign state, or (2) if no such special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention. For the same reasons as stated above with respect to the individual Defendants, neither option is available here.

Subsection 1608(a)(3) provides that if service cannot be made under Subsections (a)(1) or (a)(2), service may be made by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned. Plaintiff attempted this method of service but has not received back any signed receipt, as required by the statute. Kende Aff., ¶ 12.

Under Subsection 1608(a)(4), if service cannot be made within 30 days under Subsection 1608(a)(3), service may be made by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services, and the Secretary shall transmit one copy of the papers

through diplomatic channels to the foreign state and send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted. This option, which appears to be the only one that could succeed in the long run, is quite time-consuming in and of itself and for the additional reasons that the Department of State will not attempt diplomatic service before receiving certification from the Plaintiff that all other available means of service under Section 1608 were tried or are inapplicable (and also because this Country as yet has no diplomatic relations with Libya). Thus, additional time is needed to complete service on Libya. *See* Kende Aff., ¶ 12.

**Service on LESO**

LESO is an agency or instrumentality of Libya, and the means by which it may be served are set forth in 28 U.S.C. § 1608(b). Those means include (1) delivery of a copy of the summons and complaint in accordance with any special arrangement between the plaintiff and the foreign agency or instrumentality, (2) service upon an officer, managing or general agent or other agent authorized to accept process in the United States or in accordance with any applicable international convention, or, if (1) or (2) are not available, (3) by delivery of a copy of the summons and complaint, with a translation, (A) as directed by an authority of the foreign state in response to a letter rogatory or request, or (B) by mail dispatched by the Clerk of the Court requiring a signed receipt, or (C) as directed by order of the court consistent with the laws of the state where service is to be made. The options in Subsections (b)(1) and (b)(2) are not available, for all the reasons set forth above. Service pursuant to Subsection (b)(3)(B) has been tried, but no receipt has been returned. Kende Aff., ¶ 13.

Plaintiff has initiated the process of service by letters rogatory, pursuant to Subsection (b)(3)(A), Kende Aff., ¶ 13, but that process, in addition to requiring the cooperation of Libyan

judicial authorities, will prove extremely time-consuming, and will require additional time to complete. As stated on the State Department website (cited above), letters rogatory habitually involve "delays of up to a year or more in the execution of the requests."

**Alternative Means of Service**

Both Fed. R. Civ. P. 4(f), dealing with service on individuals in foreign countries, and 28 U.S.C. § 1608(b), dealing with service on agencies and instrumentalities of a foreign state, allow the court to designate alternative means for service of process in circumstances where the enumerated means are impractical. Thus, Fed. R. Civ. P. 4(f)(3) provides as an alternative to the enumerated methods of service upon individuals located in foreign countries, "other means not prohibited by international agreement as may be directed by the court." And 28 U.S.C. § 1608(b)(3)(C) provides, in the alternative, that service upon agencies and instrumentalities of a foreign state may be made "as directed by order of the court consistent with the law of the place where service is to be made."

Notably in this regard, Arman Dabiri, the attorney of record for Defendants in a related action, *Pugh, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.*, Civil Action No. 1:02-civ-02026-HHK, entered an appearance on behalf of all Defendants in this case on May 18, 2006. That means, at the very minimum, that Defendants have notice of this action.

## ARGUMENT

**I.    The Motion for Additional Time.**

Federal Rule of Civil Procedure 4(m) establishes a one hundred twenty (120) day time limitation for completing service of process upon defendants within the United States. By its terms, it does not apply to defendants located elsewhere ("This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1)"). Courts have explained that the

120-rule is not applicable in such circumstances due to the frequent difficulty in serving foreign defendants. *See, e.g., Sang Young Kim v. Frank Mohn A/S*, 909 F. Supp. 474, 479-80 (S.D. Tex. 1995) (the exclusion of foreign service from the 120-day limit "helps to counterbalance the complex and time-consuming nature of foreign service of process"); *Pennsylvania Orthopedic Ass'n v. Mecedes-Benz A.G.*, 160 F.R.D. 58 (E.D. Pa. 1985) (to compensate for the possibility of complex and time-consuming service, Rule 4(m) removes all deadlines for serving a complaint in a foreign country).

However, even where the 120-day rule applies (*i.e.*, domestic service) the courts have consistently and uniformly held that the 120 day limitation period is not absolute. Indeed, where the plaintiff can demonstrate good cause for its failure to timely serve process, the court is required to extend the time for service. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996). Good cause has been equated with a reasonable basis for non-compliance with the time specified. *McDonalds v. United States*, 898 F.2d 466, 467-68 (5th Cir. 1990). In fact, a number of circuit courts have eliminated good cause as a prerequisite for extending the time for obtaining proper service of process. Rather, these courts have determined that the rules allow a district court with the discretion to extend time for service of process even without a showing of good cause. *See, e.g., Davies v. Richards*, 1999 WL 26913 (4th Cir. 1999); *DeTie v. Orange County*, 152 F.3d 1109, 1111 (9th Cir. 1998); *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *Panaras v. Liquid Carbonic Industries Corp.*, 94 F.3d 338, 340-341 (7th Cir. 1996); *Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995); *Espinoza v. United States*, 52 F.3d 838, 840-841 (10th Cir. 1995). *See also Henderson v. United States,* 517 U.S. 654, 662 (1996) ("Most recently,

in the 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown'").

Here, Plaintiffs have demonstrated good cause for an extension of time to complete service. Despite the good faith efforts outlined above and in the accompanying Kende Affidavit, Plaintiff has been unable to complete service of process upon the Defendants at this time. Plaintiff's inability to effect service upon all Defendants stems from the number and location of the Defendants, the rigorous procedural requirements under the Federal Rules and FSIA, and the particular complexities involved in attempting service in Libya.[3]

## II. The Motion for an Order Directing Alternative Means of Service.

As set forth above, both Fed. R. Civ. P. 4(f), and 28 U.S.C. § 1608(b), allow the court to designate alternative means for service of process in circumstances where the enumerated means are impractical. Thus, Fed. R. Civ. P. 4(f)(3) provides as an alternative to the enumerated methods of service upon individuals located in foreign countries, "other means not prohibited by international agreement as may be directed by the court." And 28 U.S.C. § 1608(b)(3)(C) provides, in the alternative, that service upon agencies and instrumentalities of a foreign state may be made "as directed by order of the court consistent with the law of the place where service is to be made." While this option does not exist with respect to Libya, which must be served by one of the statutorily enumerated means,[4] it does exist for LESO and the individual Defendants, and its use would provide the most effective means of overcoming the enormous barriers to

---

[3] The fact that the State Department announced on May 16th that it intends to take Libya off the list of state sponsors of terrorism does not absolve the Defendants of liability, as the waiver of sovereign immunity under the FSIA applies so long as the foreign state was designated as a state sponsor of terrorism at the time the act complained of occurred. *See* 28 U.S.C. § 1605(a)(7)(A).

[4] Service on Libya will be pursued through diplomatic channels, as described above, but that is a very time-consuming process.

service which otherwise exist. Indeed, this type of court-ordered service has been particularly useful when dealing with elusive international defendants, and few restrictions exist on a court's creativity in crafting alternative means of service. *See, e.g., Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) (alternative service, including service on an American attorney consulted by defendant, justified when "faced with an international scofflaw"); *Smith v. Islamic Emirate of Afghanistan*, 2001 WL 1658211, at *3 (S.D.N.Y. 2001)(permitting alternative service, consisting of publication in local newspapers and local radio and television stations, on Osama Bin Laden and Al Qaeda); *United States v. Padilla*, 2002 WL 471838, at *1 (E.D. Cal. 2002)(authorizing service on defendant's family members and the attorney representing him in another matter).

In this case, there exists an alternative means of serving process which would be at least as effective as the methods enumerated in the Rule and Statute, and which is similar to, but even more effective than the service authorized in *Rio* and *Padilla*, namely service on the parties' attorney of record. Unlike the situation in *Rio* and *Padilla*, where service was authorized on an attorney not involved in the case at issue, service of the Summons and Complaint herein on Mr. Dabiri would constitute service on the very attorney retained by Defendants to enter an appearance in this action. And, insofar as Defendants retained Mr. Dabiri specifically to represent them in this matter, there can be no argument that service on Mr. Dabiri deprives Defendants of notice of the Complaint.

It is therefore is respectfully requested that the Court direct that service of the Summons and Complaint on Arman Dabiri, the attorney of record for Defendants, be deemed sufficient service as to all Defendants. In the alternative, it is respectfully requested that the Court order that the individual Defendants may be served by ordinary mail, care of the Libyan government,

and/or by email through Libya's foreign office (known as the General People's Committee for Foreign Liaisons and International Cooperation), at its published email address, which is sec.state@foreign.gov.ly, and that LESO, may be served by mail at its address in Tripoli, and/or by email through the Libyan foreign office.

Should the Court direct that service on Mr. Dabiri constitutes sufficient service, then, obviously, little additional time is required to complete service. However, should the Court direct that some other means of service be undertaken by Plaintiff, be it one of the enumerated methods set forth in the Federal Rules or the FSIA, or an alternative means as directed by the Court, Plaintiff respectfully requests an extension of time sufficient to complete service by such means as directed by the Court.

## CONCLUSION

WHEREFORE, Plaintiff hereby respectfully requests that the Court enter an Order directing appropriate alternative means of service of process, and that the Court also grant a further extension of time as may be necessary to effect service on all Defendants, along with all other relief this Court deems just and proper.

Dated: May 22, 2006

                                                Respectfully submitted,

                                                _____/s/_____
                                                Christopher B. Kende, Esquire (D.C. 416487)
                                                COZEN O'CONNOR
                                                1627 "I" Street, NW, Suite 1100
                                                Washington, D.C. 20006
                                                (202) 912-4800
                                                (202) 912-4830
                                                *Attorney for Plaintiff*