# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LA REUNION AERIENNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 05-1932 (HHK) |
| | ) | |
| | ) | |
| SOCIALIST PEOPLE'S LIBYAN | ) | |
| ARAB JAMAHIRIYA, LIBYAN | ) | |
| EXTERNAL SECURITY ORGANIZATION, | ) | |
| MUAMMAR QADHAFI, ABDALAH | ) | |
| SENOUSSI, AHMED ABDALLAH | ) | |
| ELAZRAGH, IBRAHIM NAELI, ABAS | ) | |
| MUSBAH, ISSA ABDELSALAM SHIBANI, | ) | |
| AND ABDELSALAM HAMMOUDA EL AGELI | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants, the Socialist People's Libyan Arab Jamahiriya, the Libyan External Security

Organization, Muammar Qadhafi (in his official capacity), Abdallah Senoussi (in his official

capacity), Ahmed Abdellah Elazragh (in his official capacity), Ibrahim Nael (in his official

capacity), Arbas Musbah (in his official capacity), Issa Abdelsalam Shibani (in his official

capacity), and Abdelsalam Hammouda El Ageli (in his official capacity) (collectively "Libya")

move to dismiss plaintiff La Reunion Aerienne's (hereafter "LRA") complaint for lack of

subject-matter jurisdiction, constitutional personal jurisdiction, and in the alternative for failure

to state a cause of action for which relief can be granted.  Undersigned counsel also makes a

<u>special limited</u> appearance on behalf of Muammar Qadhafi, Abdallah Senoussi, Ahmed Abdellah

Elazragh , Ibrahim Nael , Arbas Musbah , Issa Abdelsalam Shibani, and Abdelsalam Hammouda

El Ageli in their personal capacities to contest the Court's Order of July 2, 2006, erroneously

granting plaintiffs' request for service of process on undersigned counsel for the individual

defendants in their personal capacities.  A memorandum of points and authorities is attached

hereto.

Dated:        July 25, 2006                                Respectfully submitted,


 //s//
Arman Dabiri
Law Offices of Arman Dabiri
        & Associates, P.L.L.C.
1725 I Street, N.W.
Suite 300
Washington, D.C. 20006
Tel. (202) 349-3893
E-mail: armandab@worldnet.att.net

*Counsel for defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LA REUNION AERIENNE, | ) |
| | ) |
| Plaintiff, | ) |
| | )    Civil Case No: 05-1932 (HHK) |
| v. | ) |
| | ) |
| | ) |
| THE SOCIALIST PEOPLE'S LIBYAN | ) |
| ARAB JAMAHIRIYA, *et al.,* | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER AND PERSONAL JURISDICTION
AND FAILURE TO STATE A JUSTICIABLE CLAIM**

      This memorandum is submitted in support of defendants' motion under Rule 12(b)(1) and

(2), F. R. Civ. P., to dismiss the suit for lack of subject-matter and personal jurisdiction, and in

the alternative, under Rule 12(b)(6), for an order dismissing the suit for failure to state claims

upon which relief can be granted.

**FACTUAL ALLEGATIONS**

      Plaintiff, La Réunion Aérienne (hereafter "LRA") brings suit as an assignnee and

subrogee of Bonnie Barnes Pugh, James Turlington, Sr., Margaret Elizabeth Schutzuis, Patrick

Wayne Huff, Donald J. Warner, Mihai Alimanestianu, and Mark E. Corder (hereafter

"decedents") as well as Interlease, Inc., a corporate owner of a DC-10 Aircraft (hereafter

"Interlease").   (Comp. at 1).   The action arises out of the September 19, 1989, explosion of the

Union de Transports Aériens (UTA) Flight 772 which was bound for Paris, France, from

Brazzaville, Congo.  (Comp. at 4).

LRA is a French partnership existing pursuant to the French decree of September 23, 1967, and is comprised of, and acts on behalf of, a group of foreign insurance companies which subscribed to contracts and policies of insurance covering a certain DC-10 aircraft owned by Interlease as well as, presumably, the above referenced decedents. (Comp. at 3)

## JURISDICTIONAL ALLEGATIONS

LRA claims that the Court's has [subject-matter] matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§1330(a), 1605(a)(7), 18 U.S.C. § 2333(a), and 28 U.S.C. § 1367.  (Comp. at 3).

## PROCEDURAL HISTORY

On October 16, 2002, Robert Pugh and personal representatives and survivors of seven American passengers killed in an explosion, as well as Interlease (the corporate owner of the aircraft destroyed), commenced suit in the United States District Court for the District of Columbia against Libya as well as several individual defendants seeking wrongful death damages and economic losses under various state and federal provisions.  Civil Case No. 02-2026 (TPJ)

On July 20, 2005, LRA filed a motion for intervention as a party plaintiff pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b)(2).  The motion for intervention by LRA was filed two years and ten months (a total of thirty four months) after the commencement of the action before the district court by the original plaintiffs.  Libya opposed LRA's motion to  intervene as untimely,

amongst other grounds.  The district court upon considering the parties pleadings, on August 23,

2005, denied LRA's motion to intervene as untimely.  LRA noticed a timely appeal to the United

States Court of Appeals for the District of Columbia Circuit. (Docket No. 05-7122).  On

November 17, 2005 Libya filed a motion for summary affirmance of the District Court Order.

On March 2, 2006, the D.C. Circuit Court of Appeals granted Libya's motion for summary

affirmance.  A true copy of the Circuit Court's Order is attached as Exhibit A.

On September 30, 2006, LRA filed the a complaint in the above captioned matter in the

before this Court.

## STATUTES INVOLVED

28 U.S.C. § 1330:

### § 1330.        Actions against foreign States

(a) The district courts shall have original jurisdiction without
regard  to amount in controversy of any nonjury civil action against
a foreign state as defined in section 1603(a) of this title as to any
claim for relief in personam with respect to which the foreign state is
not entitled to immunity either under sections 1605-1607 of this title
under any applicable international agreement.
(b) Personal jurisdiction over a foreign state shall exist as to
every claim for relief over which the district courts have jurisdiction
under subsection (a) where service has been made under section 1608
of this title.
(c) For purposes of subsection (b), an appearance by a foreign
state does not confer personal jurisdiction with respect to any claim
for relief not arising out of any transaction or occurrence enumerated
in sections 1605-1607 of this title.

28 U.S.C. § 1605(a)(7):

3

### § 1605.  General exception to the jurisdictional immunity of a foreign state

 **(a)** a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –

**(7)** not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph –

> **(A)** if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act; and

> **(B)** even if the foreign state is or was so designated, if –
> **(I)** the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or

> **(ii)** neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.

28 U.S.C. § 1367:

### § 1367.   Supplemental jurisdiction

(a) Except as provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

18 U.S.C. § 2333:

### § 2333.   Civil remedies

(a) Action and Jurisdiction.— Any national of the united States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2337:

### § 2337.        Suits against Government officials

No action shall be maintained under section 2333 of this title against –

(1) . . . .

(2) a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his or her official capacity or under color of legal authority.

## ARGUMENT

### *INTRODUCTION*

The Foreign Sovereign Immunities Act of 1976 ("FSIA") starts with the general rule that foreign states are immune from suit in the United States courts; it also lists the limited circumstances under which a foreign state will be denied immunity and establishes that the Act is the sole basis for asserting jurisdiction over foreign nations in Unites States Courts. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989). The Supreme Court has held that "a foreign state is presumptively immune from jurisdiction of United States courts, and that unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); 28 U.S.C. § 1604.

In 1996, as part of the comprehensive Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, §221(a), 110 Stat. 1214 (Apr. 24, 1996) (1996 Amendment), Congress amended the FSIA to add a new exception to sovereign immunity where money damages are sought against foreign states that have been designated as state sponsors of terrorism by the Secretary of State. Suit may be brought under the 1996 Amendment for *personal injury* or *death* caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act. 28 U.S.C. § 1605(a)(7); *see* Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 87 (D.C. Cir. 2002) (hereafter "Price I).

Libya, pursuant to 50 U.S.C. App. § 2405(j) or 22 U.S.C. § 2371, was designated as a State Sponsor of Terrorism by the Secretary of State in 1979. Designations under these statutes

6

are made by the Secretary of State for the purposes of regulating, respectively, exports and foreign aid.   But since the passage of § 1605(a)(7) in 1996, the Secretary's designations affect foreign sovereign immunity as well.

On May 12, 2006, however, the President of the United States, through Presidential Determination No. 2006-14, titled as a "Memorandum for the Secretary of State" provided certification for rescission of Libya's designation as a State Sponsor of Terrorism.   A Memorandum of Justification accompanied the President's Declaration which was forwarded to Congress and provided for a review period of 45 days upon the termination of which the Secretary of State could rescind Libya's terrorist designation at the discretion of the Executive. A copy of both documents is enclosed for the Court's review as  "Exhibit B".

Libya, on or about June 30, 2006, was subsequently removal from the State Department's list of designated state sponsors of terrorism.


I.      **THE COURT LACKS SUBJECT-MATTER JURISDICTION**

A.      _FSIA the Sole Source for Subject-Matter Jurisdiction_

It is now established, both by the Supreme Court, as well as almost all Circuit Courts of Appeals within the federal system, that the FSIA provides the **sole** source of subject-matter jurisdiction in suits against a foreign state. Argentine Republic, 488 U.S. at 434-39.  _See_ Republic of Austria v. Altman, 541 U.S. 677, 697-700 (2004);  Chance v. Taiwan, 86 F.3d 1146 (1st Cir. 1996);  Robinson v. Government of Malaysia, 269 F.3d 133, 138 (2d Cir. 2001); Sandoval v. Reno, 166 F.3d 225, 235 (3d Cir. 1999);  Velasco v. The Government of Indonesia, 370 F.3d 392, 395 (4th Cir. 2004);  In re B-727 Aircraft Serial No. 21010, 272 F.3d 264, 270

(5th Cir. 2001);  Keller v. Central Bank of Nigeria, 277 F.3d 811, 820 (6th Cir. 2002); Sampson

v. Federal Republic of Germany, 250 F.3d 1145, 1148 (7th Cir. 2001);  Flatow v. Islamic

Republic of Iran, 308 F.3d 1065, 1069 (9th Cir. 2002);  Southway v. Central Bank of Nigeria,

328 F.2d 1267, 1271 (10th Cir. 2003);  Alejandre v. Telefoncia Larga Distancia, de Puerto Rico,

Inc., 183 F.3d 1277, 1282 (11th Cir. 1999). [1]

Under the FSIA, the foreign sovereign has "immunity from trial and the attendant

burdens of litigation, and not just a defense to liability on the merits." Phoenix Consulting, Inc.

v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000) (quoting Foremost-McKesson, Inc. v.

Islamic Republic of Iran, 905 F.2d 438, 443 (D.C. Cir. 1990)).  Once a foreign-sovereign

defendant asserts immunity, the plaintiff bears the burden of producing evidence to show that

there is no immunity and that the court therefore has jurisdiction over the plaintiff's claims.

Daliberti v. Republic of Iraq, 97 F. Supp. 2d 38, 42 (D.D.C. 2000) (citing Amerada Hess, 488

U.S. at 434-35).

LRA asserts that the Court also has subject-matter jurisdiction "by reason of . . . 18

U.S.C. § 2333 and 28 U.S.C. § 1367".  (Comp. at 3).  The assertion is contrary to the precedent

established by the Supreme Court as well as almost every decision by the Circuit Court of

Appeals (*see supra*), as well as almost all federal district court's of the United States.  The Court

may not exercise subject-matter jurisdiction in reliance on 18 U.S.C. § 2333 or 28 U.S.C. § 1367.

---

[1] No case on point was found in the United States Court of Appeals for the Eighth
Circuit.

B.    *The Court Lacks Subject-matter Jurisdiction*
      *Under the FSIA*

LRA's complaint boldly asserts that the Court can exercise subject-matter jurisdiction under the Foreign Sovereign Immunities Act of 1976 (Comp. at 3). That statement is inaccurate and misleading. The causes of action asserted by LRA do not "arise under" the FSIA; they arise under commercial contracts of insurance underwritten by LRA insuring Interlease Inc. against liability. Claims of this nature are governed by substantive state, not federal, law. The FSIA, on its part, concerns access to courts in suits against foreign sovereigns, i.e., it grants subject-matter jurisdiction to federal and state courts, and it "governs the types of actions for which foreign sovereigns may be held liable in a court in the United States." Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 496-7 (1983).

LRA, a partnership organized under the laws of France has asserted claims for Wrongful death, assignment, and subrogation (First Claim for Relief); indemnity (Second Claim for Relief); contribution (Third Claim for Relief); conversion (Fourth Claim for Relief); trespass to chatteles (Fifth Claim for Relief) and punitive damages against the individual defendants, pursuant to 18 U.S.C. § 2333, in their personal capacities. LRA's complaint would also seem to seek punitive damages against Libya, the LESO and the individual defendants in their official capacities.

The Court lacks subject-matter jurisdiction under the FSIA to hear any claims asserted by LRA. Section 28 U.S.C. § 1605(a)(7), in relevant part, reads:

> **§ 1605. General exceptions to the jurisdictional immunity of a foreign state**
>
> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case–

> (7) not otherwise covered by paragraph (2), **in which money damages are sought against a foreign state for personal injury or death** that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph–

(emphasis added).  Section 1605 creates an exception to the immunity of a foreign state where money damages are sough for "personal injury or death".   By its own admission, LRA is not asserting claims for wrongful death or injury under §1605(a)(7), but instead it seeks to recover money damages for assignment, subrogation, indemnity, conversion, and trespass to chatteles.[2]

On its face, § 1605(a)(7)  creates a cause of action 1) <u>in favor of United States nationals</u>, and 2) <u>for personal injury or death</u>.  LRA does not, and cannot, meet the conditions of the 1996 Amendment to the FSIA: 1) LRA is a legal entity, not an individual; and  2) LRA is asserting causes of action as an assignee and subrogee, whereas § 1605(a)(7) permits only suits for personal injury or death.  Simply put, the Court lacks subject-matter jurisdiction to hear claims asserted by LRA.

It is the duty of the Court "to give effect, if possible, to every clause and word of a statute."  <u>United States v. Menascheu</u>, 348 U.S. 528, 538-539 (1955) (quoting <u>Montclair v. Ramsdell</u>, 107 U.S. 147, 152 (1883));  *see also* <u>Williams v. Taylor</u>, 529 U.S. 362, 404 (2000)

---

[2] LRA has also asserted a claim for wrongful death but the complaint admits that it is acting as an assignee and subrogee in this action.  As a partnership it clearly cannot assert a cause of action for "wrongful death" as it is a fictional legal entity and not an individual.  The claim for wrongful death is asserted either as mistake or as a transparent attempt to meet the specific terms within the language of § 1605(1)(7).

(describing this rule as a "cardinal principle of statutory construction");  Duncan v. Walker, 533 U.S. 167, 174 (2001).

The language of § 1605(a)(7) is unambiguous and the Court's inquiry must end there.   In consequence, this Court lacks subject-matter jurisdiction to hear plaintiffs' claims under 28 U.S.C. § 1605(a)(7) of the FSIA.

C.    *LRA is not Nationals of the United States*

The Court lacks subject-matter jurisdiction under the FSIA to hear any claims asserted by a plaintiff that is not a national of the United States.  The FSIA entitles Libya to immunity from civil suits in United States courts, with specific exceptions.  Simpson v. Socialist People's Libyan Arab Jamahiriya, 326 F.3d 230,  233  (D.C. Cir. 2003) (hereafter "Simpson II");  Price v. Socialist People's Libyan Arab Jamahiriya,  389 F.3d  192, 196 (D.C. Cir. 2004) (hereafter Price II")  ("A foreign state is immune from suit in both federal and state courts, 28 U.S.C. § 1604, unless the case comes within an express exception in the FSIA").  " If no exception applies, a foreign sovereign's immunity under the FSIA is complete:  The district court lacks subject matter jurisdiction over the plaintiff's case." *Id*.  (*Citing* Phoenix Consulting v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000)).

For a United States Court to have subject-matter jurisdiction pursuant to 1996 Amendment to the FSIA codified under § 1605(a)(7), the plaintiff must generally demonstrate the following:

"(1) that personal injury or death to an individual resulted from an act of torture,

extrajudicial killing, aircraft sabotage, or hostage taking;  and

11

(2) the act was either perpetrated by the foreign state directly or by a non- state actor which receives material support or resources from the foreign state defendant;  and

(3) the act or the provision of material support or resources is engaged in by an agent, official or employee of the foreign state while acting within the scope of his or her office, agency or employment;  and

(4) that the foreign state be designated as a state sponsor of terrorism either at the time the incident complained of occurred or was later so designated as a result of such act; and

(5) if the incident complained of occurred with [sic] the foreign state defendant's territory, plaintiff has offered the defendants a *reasonable opportunity to arbitrate the matter;* and

(6) either the plaintiff or the victim was a United States national at the time of the incident;  and

(7) similar conduct by United States agents, officials, or employees within the United States would be actionable."

Simpson v. Socialist People's Libyan Arab Jamahiriya, 180 F.Supp.2d 78, 83 (D.D.C. 2002) (hereafter "Simpson I") (*Citing* 28 U.S.C. § 1605(a)(7)).   The question in this case, as in all sovereign immunity cases, is whether the plaintiffs' claims fall within the exception, upon which the jurisdiction of the district court depends.  Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1127 (D.C. Cir. 2004).  The answer in the instant suit is unquestionably no as LRA cannot satisfy the requirements for falling under the exception to immunity codified under § 1605(a)(7) (or any section of the FSIA).  The complaint concedes that

12

LRA is a French Partnership. (Comp. at 1-2, ¶ 1-2).

Section 1605(a)(7), in relevant part, states:

**(a)** a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –

  **(7)** . . . except that the court shall decline to hear a claim under this paragraph –

> **(A)** if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act; and

> **(B)** even if the foreign state is or was so designated, if –
>  . . . .

> **(ii)** neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.

Section 1605(a)(7)(B)(ii) instructs the court to decline to hear a claim under the 1996

Amendment to the FSIA when the claimant and the injured party are not nationals of the United

States.

D.     *The Court Lacks Subject-matter Jurisdiction*
       *for any Claim Related to Interlease*

The Court also further lacks subject-matter jurisdiction over any claim by LRA as an

assignee or subrogee of Interlease.  LRA concedes that its rights are limited to any rights which

the decedents or Interlease may have asserted against defendants.

In the suit instituted by Interlease for economic losses under various state and federal

13

provisions, Civil Case No. 02-2026 (TPJ), against Libya as well as the same individual

defendants as the instant case the Court held that claims against the Libyan state, LESO, and

against the individual defendants in their official capacities were barred. <u>Pugh v. Socialist

People's Libyan Arab Jamahiriya</u>, 290 F. Supp. 2d 52, 61 (D.D.C. 2003).  LRA may not,

assuming that subject-matter jurisdiction exists for claims as an assignee or subrogee, enjoy

greater rights than Interlease.

     The position on <u>Pugh</u> has been upheld indirectly  in our Circuit.  The Court of Appeals,

in <u>Cicippio-Puleo v. Islamic Republic of Iran</u>, 353 F.3d 1024,1032  (D.C. Cir. 2004) commences

its opinion by reiterating the general premise that § 1605(a)(7) waives sovereign immunity of a

foreign state were money damages are sought for "personal injury or death". The Court, in

relevant part held:

> Section 1605(a)(7) waives the sovereign immunity of a designated
> "foreign state" in actions in which money damages are sought for
> personal injury or death caused by one of the specified acts of
> terrorism, if the act of terrorism or provision of material support is
> engaged in by "an official, employee, or agent of such foreign state
> while acting within the scope of his or her office, employment, or
> agency.

<u>Id</u>.  The Court further held that the language of §1605(a)(7) is clear and limited the application of

§ 1605(a)(7) to the plain language of the Statute.  <u>Id</u>. at 1033.  <u>Cicippio</u>  relied heavily upon §

1605(a)(7)'s legislative history in making its determination.  The Court's analysis in <u>Cicippio</u>

warrants restating at length.  The Court, in relevant part, held:

>    When Congress passed <u>section 1605(a)(7)</u>, the Conference
> Committee report explained:
>> This subtitle provides that nations designated as
>> state sponsors of terrorism under section 6(j) of the
>> Export Administration Act of 1979 will be
>> amenable to suit in U.S. courts for terrorist acts. It

14

> permits U.S. federal courts to hear claims seeking
> money damages for **personal injury or death**
> against such nations and arising from terrorist acts
> they commit, or direct to be committed, against
> American citizens or nationals outside of the
> foreign state's territory, and for such acts within the
> state's territory if the state involved has refused to
> arbitrate the claim.
> H.R. Conf. Rep. No. 104-518, at 112 (1996).

*Id*. at 1035.  (Emphasis added).  The language of the Conference Committee report relied upon

by the Court of Appeals in Cicippio's binding opinion makes ir clear that § 1605(a)(7) only

permits United States federal courts to hear claims seeking money damages for "personal injury

or death" and for such acts committed or directed to be committed, against American citizens or

nationals.  *Id*.  Nothing in the Committee Report allows for the extension of claims beyond those

for personal injury and/or death.  The language is also further limited to American citizens and

nationals.  The Court admonishes that the "ultimate question is one of congressional intent, not

one of whether this Court thinks that it can improve upon the statutory scheme that Congress

enacted into law."  *Id*. at 1033.

       LRA's claims for third party money damages for conversion and trespass to chattels are

clearly not claims for personal injury or death and are beyond the clear language of §1605(a)(7).

       If the Court were to exercise subject-matter jurisdiction over the conversion claims it

would go beyond the congressional intent in amending the FSIA and in effect create a new

exception to foreign sovereign immunity.  The Court should dismiss plaintiffs' claims with

prejudice.

E.    _Libya's Removal from State Department List_

The Supreme Court previously has upheld the existence of federal court jurisdiction when jurisdiction depended on a factual determination that had been delegated to the Department of State.   _See_ Jones v. United States, 137 U.S. 202 (1890).   The Second Circuit also has denied jurisdiction on the basis of an analogous finding by the executive branch. See Matimak Trading Co. v. Khalily, 118 F.3d 76 (2d Cir.1997), _cert. denied_ 522 U.S. 1091(1998).

The Supreme Court case above occurred more than a hundred years ago, when a man named Jones was indicted in federal court for a murder that occurred on the Caribbean island of Navassa.   _See_ Jones, 137 U.S. at 216.  Jurisdiction to try Jones in an American court depended on the island's status as American territory.   The Secretary of State had recently deemed Navassa an island "appertaining to the United States." _Id_. at 217.   He had made that announcement pursuant to the Guano Islands Act of 1856, § 1, which empowered the President to declare Caribbean guano islands American. See _id_. at 209.   The Supreme Court held that such a declaration could be made "through the Department of State, whose acts in this regard are in legal contemplation the acts of the president." _Id_. at 217.   The Court went on to hold that the Secretary's statement did in fact make the island one "appertaining to the United States" and that jurisdiction over Jones's crime was therefore proper.  _Id_. at 224.

The Supreme Court has also extensively considered the issue of federal court jurisdiction. The Supreme Court, in relevant part, held:

> Congress may exert its power . . . by imposing judicial function of adjudicating justiciable controversies on the regular federal courts which under the Constitution it has the power to ordain and establish and which I may invest with jurisdiction and from which it may withhold jurisdiction in exact degrees and character which to Congress may seem proper for the public good. (Emphasis added,

internal citations and quotes omitted).

<u>National Mut. Ins. Co. of District of Columbia v. Tidewater Transfer Co., Inc.</u>, 337 U.S. 582, 600 (1949).  The Supreme Court has also specifically addressed the issue of withdrawal of jurisdiction of federal courts and the effect of such withdrawal or repeal on pending actions.  The Court, in <u>Bruner v. United States</u>, 343 U.S. 112, 116-117 (1952), in relevant part, held:

> Jurisdiction in such cases was conferred by an act of Congress, and when that Act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no saving clause, all pending actions fell, as jurisdiction depended entirely upon the act of Congress . .  This rule-that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law-has been adhered to consistently by this Court.

<u>Id</u>.  In the instant case Congress has delegated the authority of designating foreign states as state sponsors of terrorism, which affects sovereign immunity of that foreign state, to the Executive Branch of the Government.  The Executive Branch has now rescinded Libya's designation.  Presidential Determination No. 2006-14 of May 12, 2006 contains no reservation of jurisdiction for pending cases.  Libya's designation as a state sponsor of terrorism was has also been revered.  Consequently the jurisdiction of the Court has now been removed.  The Court should dismiss this action in its entirety as Libya's removal may remove any and all jurisdiction for this case.

II.    **THE EXERCISE OF PERSONAL JURISDICTION OVER INDIVIDUAL DEFENDANTS VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION**

The Congress of the United States is a legislature of enumerated and specific powers, and can only act in accordance with the limitations imposed by the Constitution. <u>Marbury v. Madison</u>, 1 Cranch 137, 5 U.S. 137, 176, 2 L.Ed. 60 (1803).  When Congress is required

17

to establish some procedure concerning the deprivations of life, liberty or property, the scope of permissible procedures is limited by specific constitutional guarantees.  The civil trial process is regulated by constitutional guarantees of due process restrictions on courts jurisdiction. (*Ibid.*)

A nonresident defendant is constitutionally amenable to a forum's personal jurisdiction if it possesses (1) sufficient minimum contacts with the forum to satisfy due process requirements, and (2) if the forum's exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." International Shoe Co. 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  This two-part test embodies the controlling due process principle that a defendant must have "fair warning" that a particular activity may subject it to the jurisdiction of a foreign court.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

To meet constitutionally mandated minimum contacts, the defendant's contacts with the forum must satisfy three criteria:

First, the contacts must be related to the plaintiffs' cause of action or have given rise to it. Burger King, *supra*, 471 U.S. at 472.  Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

It is clear that the United States nationality of the decedents and Interlease do not furnish the requisite nexus with the United States so as to permit the maintenance of this *in*

*personam* action over the individual defendants. In <u>Callejo v. Bancomer, S.A.</u>, 764 F.2d 1101, 1111 (5th Cir. 1985), the Circuit Court observed that jurisdictional contacts with the United States were purely fortuitous "where they depended solely on the fact that the injured person happened to be American." *See also*, <u>Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccio De Costa Rica</u>, 614 F.2d 1247, 1253-55 (9th Cir. 1980) ("minimum contacts" standard not satisfied when the only link to the United States is plaintiff's nationality).

Although the FSIA (in conjunction with 28 U.S.C. § 1330(b)) establishes personal jurisdiction over a state, it does not independently establish personal jurisdiction over an individual. <u>I.T. Consultants, Inc. v. Republic of Pakistan</u>, 351 F.3d 1184, 1191 (D.C. Cir. 2003); <u>Price I</u>, 294 F.3d at 96.

The recent decision in <u>Price II</u>, 294 F.3d at 99-100 expressed no view on the entitlement to due process of "other entities" and, in relevant part, stated:

> In sum, we hold that the Fifth Amendment poses no obstacle to the decision of the United States government to subject Libya to personal jurisdiction in the federal courts. Our decision on this point reaches only an actual foreign government; we express <u>no view</u> as to whether other entities that fall within the FSIA's definition of "foreign state" including corporations in which a foreign state owns a majority interest, see 28 U.S.C. 1603(b) - - could yet be considered persons under the Due Process Clause. (Emphasis added).

<u>*Id.*</u> Thus, the decision in <u>Price</u>, even though deciding that a foreign state may not benefit from due process protections under the Fifth Amendment of the Constitution, does not decide the issue of whether an individual is entitled to due process protections. <u>Price</u> also, in comparing due process to a foreign individual's right of access to United States Court's held that "Private individuals have a constitutional right of access to courts". *Id.* at 97. The Court went on to hold

19

that under the Due Process Clause the "personal jurisdiction requirement is not a structural limitation on the power of courts. Rather, the personal jurisdiction requirement recognizes and protects an <u>individual</u> liberty interest. It represents a restriction on judicial power not a matter of sovereignty, but as a matter of individual liberty." (Emphasis added, internal quotes omitted). <u>Id</u>. at 98. The "core concept of due process is to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." <u>Id</u>. (Internal quotations and citations omitted).

The core of minimum contacts theory is that personal jurisdiction is limited by the Due Process Clause. As <u>Price</u> did not directly decide the issue of foreign individuals issue, the individual defendants submit that they are protected by the Fifth Amendment's due process protections.

This Circuit has consistently held that the requirements of the FSIA for personal jurisdiction do not affect the constitutional *in personam jurisdiction* requirements of the Due Process Clause of the Fifth Amendment <u>Foremost-McKesson, Inc. v. Islamic Republic of Iran</u>, 905 F.2d 438, 442 n. 10 (D.C. Cir. 1990).

More recently our Circuit has held that the district court "may exercise personal jurisdiction over defendant, consistent with due process, only if there are 'minimum contacts' between defendant and forum such that maintenance of suit does not offend traditional notions of fair play and substantial justice". <u>Junquist v. Nahyan</u>, 115 F.3d 1020, 1030 (D.C. Cir. 1997). The Court further held that "While defendant's absence of physical contact with forum will not defeat personal jurisdiction there, defendant's conduct and connection with forum must be such that he should reasonably anticipate being haled into court there for exercise of jurisdiction to

satisfy due process". *Id.* at 1031. *Also see*, Maritime Intern. Nominees Establishment v. Republic of Guinea, 693 F.2d 1094, 1105 n. 18 (D.C. Cir. 1982)("A finding of FSIA personal jurisdiction, which would rest in part on a finding of non-immunity, must comport with the demands of due process, and Congress intended that the Act satisfy those demands"); Gilson v. Republic of Ireland, 682 F.2d 1022, 1028 (D.C. Cir. 1982) ("a statue cannot grant personal jurisdiction where the Constitution forbids it").

The Second Circuit in U.S. Titan, v. Inc. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2nd Cir. 2001) held that "In general subject matter jurisdiction plus service of process equals personal jurisdiction under the FSIA. . . . [h]owever, the exercise of personal jurisdiction . . . must also comport with the Due Process Clause, which permits a forum to exercise personal jurisdiction over a non-resident defendant who has 'certain minimum contacts [with the forum] . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *See also* Reis v. Societe Centrale Du Grupe Des Assurances Nationales, 235 F.3d 738, 746 (2nd Cir. 2000) (Constrained only by constitutional due process considerations, personal jurisdiction under the FSIA equals subject matter jurisdiction plus valid service of process).

Simply put, the FSIA and its amendments may not "create personal jurisdiction where the Constitution forbids it." Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300, 308 (2d Cir. 1981). The individual defendants are not within the definition of "foreign state" in § 1603(a) and § 1330(b) is inapplicable to them. *Cf.* Ungar v. Palestinian Authority, 153 F.Supp.2d 76, 91-95 (D.R.I. 2001) (holding in an action under 18 U.S.C. § 2333 that personal jurisdiction was lacking over individual defendants who were senior officials of the

21

Palestinian Authority and the PLO for lack of minimum contacts with the United States).

The Court should dismiss the complaint against the seven individual defendants as it

lacks *in personam* jurisdiction over the individual defendants.


III.    **COURT LACKS PERSONAL JURISDICTION OVER LIBYA**

Libya is fully cognizant that the issue of the constitutionality of personal jurisdiction over

the state has been decided adversely by this Court in Price I;  to preserve the issue for potential

further review, the matter is respectfully raised once again in this instant case as the holding in

Price I may now  be in question due to the language in Republic of Austria v. Altman, 541 U.S.

677, ___ , 124 S.Ct. 2240, 2262 (2004) ,  which held:

> For one thing, statutes of limitations, **personal jurisdiction** and
> venue requirements, and the doctrine of *forum non conveniens* will
> limit the number of suits brought in American Courts.

*Id*. (emphasis added).


IV.    **QADHAFI ENJOYS HEAD-OF-STATE IMMUNITY**

Muammar Qadhafi is the head of the Libyan State, a foreign sovereign nation. As such

defendant Qadhafi enjoys head-of-state immunity and the Court should grant Libya's cross-

motion for summary judgment and dismiss plaintiffs' complaint against him.   The issue of head-

of-state immunity has received thorough examination in several cases.  Most recently in Ye v.

Zemin, 383 F3d 620, 625 (7th Cir. 2004) the Court of Appeals reviewed the history of the

immunity and outlined its boundaries.  The Court, in relevant part, held:

> The FSIA does not, however, address the immunity of foreign heads

of states.  The FSIA refers to foreign states, not their leaders. The FSIA defines a foreign state to include a political subdivision, agency or instrumentality of a foreign state but makes no mention of heads of state. 28 U.S.C. § 1603(a).  Because the FSIA does not apply to heads of states, the decision concerning the immunity of foreign heads of states remains vested where it was prior to 1976--with the Executive Branch. *Noriega,* 117 F.3d at 1212. ("Because the FSIA addresses neither head-of-state immunity, nor foreign sovereign immunity in the criminal context, head-of-state immunity could attach in cases, such as this one, only pursuant to the principles and procedures outlined in [*McFaddon* ] and its progeny.  As a result, this court must look to the Executive Branch for direction on the propriety of Noriega's immunity claim.").

*Id.*  A sister District Court in this Circuit, as well as this Court in Pugh (Docket No. 02-2026

(HHK)), has requested the position of the Executive Branch on head-of-state immunity for

Qadhafi.  Collett v. Socialist People's Libyan Arab Jamahiriya, 362 F.Supp.2d 230, 237 (D.D.C.

2005).  The position of the United States Department of State is to be submitted to the Honorable

Judge Urbina in the above referenced matter by September 30, 2006.


V.    **PUNITIVE DAMAGES NOT AVAILABLE**

A.    *Punitive Damages Barred by Statute*
      *Against Libya and LESO*

28 U.S.C. § 1606, in relevant part, states that "a foreign state except for an agency or

instrumentality thereof shall not be liable for punitive damages".  Consequently LRA claim for

punitive damages should be dismissed pursuant to the clear prohibition enunciated in the FSIA.

Libya asserts that the Libyan External Security Organization is not an instrumentality

of the Libyan government but it is a department or subdivisions within the Libyan Government.[3]

---

[3] LRA concedes that LESO is a department of the Libyan Government but erroneously concludes that under 28 U.S.C. § 1603 LESO should be considered an "agency or

23

Any questions regarding the status the Libyan External Security Organization can be resolved in reliance on this Circuit's adopted categorical approach in determining whether any named defendant is an agency or instrumentality of a foreign state or whether it is a political subdivision of the foreign state.  In Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 149-53 (D.C. Cir. 1994) this Circuit Court held that "Any government of reasonable complexity must act through men organized into offices and departments."  Id. at 153.  The Court adopted the following approach: if the core functions of the entity is governmental, it is considered the foreign state itself; if commercial, the entity is an agency of instrumentality of the foreign state. Id.  This categorical approach was again confirmed most recently in Roeder v. Islamic Republic of Iran, 333 F.3d 228, 234 (D.C. Cir. 2003).

There can be no doubt that the external security apparatus of Libya is not commercial in nature and that it performs purely governmental activities related to the security of Libya. The categorical approach in this Circuit clearly prove that the above named defendant is not an agency or instrumentality.  Section 1606 provides that Libya and the External Security Organization may not be held liable for punitive damages.

Libya attaches for the Court's review an opinion (English translation and original Arabic) by the Head of Legal Affairs Department, Justice and State Security General Popular Committee of the Libyan Government regarding the status of the Libyan External Security Organization within the government of Libya (Exhibit C).

Thus the Court should dismiss plaintiffs' unsustainable request for punitive damages as both Libya and the External Security Organization enjoy full sovereign immunity from punitive

---

instrumentality" of Libya. (Comp. at 2, ¶ 7).

damages.

B.      *Punitive Damages Not Available Against Any Defendant*

LRA's assertion of punitive damages against the individual defendants, both in their

official and individual capacities is also without merit.  LRA has filed suit for recovery of the

monies expended for its insurance contracts and policies with Interlease".  LRA admits that its

suit is only as an "assignee and subrogee" of the rights of the decedents and Interlease.  (Comp.

at 1).  LRA cannot assert any new and independent claims - thus the Court may not award any

Punitive damages against any defendant as LRA's alleged right can arise only from its rights of

subrogation and assignment.  The Court should dismiss any and all requests for punitive (or

treble damages).

## VI.    <u>INDIVIDUAL DEFENDANTS NOT LIABLE IN THEIR PERSONAL CAPACITY</u>

It is appropriate in this case to consider whether the action against the individual Libyan

defendants in their personal capacities are merely disguised actions against the State of Libya

itself.

It has now long been established that foreign sovereigns are legal fictions to the extent

that they can only act through their individual officers.  <u>Transaero v. La Fuerza Aerea Boliviana</u>,

30 F.3d 148, 153 (D.C. Cir. 1994) ( "[a]ny government of reasonable complexity must act

through men organized into offices and departments").  A suit against an individual offices of a

nation who has acted on behalf of that nations is the functional equivalent of a suit against the

state itself".  <u>Park v. Shin</u>, 313 F.3d 1138, 1144 (9th Cir. 2002).  In contrast, and as noted

recently in <u>Doe v. State of Israel</u>, 400 F.Supp.2d 86, 104 (D.D.C. 2005), a suit against an officers

in their personal capacities must pertain to private action- that is, to actions that exceed the scope of authority vested in that official so that the official cannot be said to have acted on behalf of the state. *Id. citing* El Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996). Obviously, if the officer purports to act as an individual and not as an official, a suit directed against that individual is not a suit against the sovereign. Park, 313 F.3d at 1144.

LRA has asserted causes of action against the individual defendants in both their official and personal capacities. LRA makes the exact same allegations against the individual defendants in their personal capacities as against them in their official capacities. LRA never asserts that the individual defendants acted out of personal gain or private motivation. State of Israel, 400 F.Supp.2d at 105. LRA has also failed to serve the individual defendants separately in their personal capacities. (*See below*).

It is clear that the suit against the individual defendants in their personal capacities is nothing more than a "redundant" suit against Libya where subject-matter jurisdiction does not exist against Libya. Consequently, the Court should dismiss the suit against the individual defendants in their personal capacities.

**VII.    LRA HAS FAILED TO ASSERT A CAUSES OF ACTION**

LRA's complaint has  failed to assert any specific cause of action as required by this Circuit.

A.    *Common Law*

Simply reciting generic common law causes of action in the complaint will not do. The

Court of Appeals, in <u>Acree v. Republic of Iraq</u>, 370 F.3d 41, 59 (D.C. Cir. 2004) specifically held that generic common law cannot be the source of a federal cause of action. The Court, in relevant part, held:

> [G]eneric common law cannot be the *source* of a federal cause of action. The shared common law of the states may afford useful guidance as to the rules of decision in a FSIA case where a cause of action arises from some specific and concrete source of law. *See Bettis*, 315 F.3d at 333 (assuming, *arguendo,* that plaintiffs stated a cause of action under the Flatow Amendment and then turning to generic common law to flesh out the controlling substantive law). But there is no support for the proposition that generic common law itself may furnish the cause of action. Rather, as in any case, a plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law. (Emphasis added).

LRA should have identified a particular cause of action arising out of the specific common law of a state.

In <u>Bettis</u>, 315 F.3d at 332 the Court of Appeals also held that most Flatow Amendment cases have applied federal common law but then goes on to hold that the term is incorrect. <u>Bettis</u>, in relevant part, held:

> [F]ederal common law' seems . . . to be a misnomer. Indeed, it is a mistake, we think, to label actions under the FSIA and the Flatow Amendment cases arising under the FSIA . . . . as 'federal common law cases as these actions are based on *statutory* rights. Without the statute, the claims could not arise.

*Id.* at 332. (Emphasis added). The holding in Bettis has already decided that LRA may not rely on federal common law.[4]

---

[4] The issue of whether state common law is available to claimants as a private cause of action in a federal action against foreign states has not specifically been decided by this Circuit. Although it is true that in <u>Cicippio-Puleo v. Islamic Republic of Iran</u>, 353 F.3d 1024 (D.C. Cir. 2004) the Court allowed the case to be remanded to the lower court, the Court also held:

As  LRA has failed to identify and assert the law of a particular State on which they intend to rely upon the Court should dismiss LRA's complaint.

B.      *Foreign Sovereign Immunities Act*

LRA's Third claim for relief, in passing, also asserts the FSIA as a cause of action.  This assertion can be dismissed very easily.  This District of Columbia Circuit Court, in <u>Cicippio-Puleo</u>, 353 F.3d at 1033 conclusively held that the Flatow Amendment and the 1996 Amendment to the FSIA (§ 1605(a)(7)) did not create a private cause of action against a foreign government. The Court, in relevant part, held:

> We now hold that neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private right of action against a foreign government. Section 1605(a)(7) merely waives the immunity of a foreign state without creating a cause of action against it, and the Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself.

C.      <u>18 U.S.C. § 2333 Cannot be Relied Upon</u>

LRA has also asserted a cause of action for treble damages against Libya, LESO and the individual defendants in the official capacities. Although LRA does not specify the statutory

---

> In remanding, we do not mean to suggest, one way or the other, whether plaintiffs have a viable cause of action. The possibility that an alternative source of law might support such a claim was addressed only by *amici*, and we do not ordinarily decide issues not raised by the parties. Accordingly, we will leave it to the District Court in the first instance to address any amended complaint that is offered by plaintiffs. Accordingly, we will leave it to the District Court in the first instance to address any amended complaint that is offered by plaintiffs.

28

basis for it assertion it can be assumed that it is pursuant to 18 U.S.C. § 2333.

LRA may not draw any comfort from § 2333(a) as § 2337 bars suits against foreign states, its

agents and employees. Section 2337, in relevant part, reads:

> **§ 2337. Suits against Government officials**
>
> No action shall be maintained under section 2333 of this title against –
>
> **(1) . . . .**
>
> **(2)** a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his or her official capacity or under color of legal authority.

It is clear that LRA may not maintain any action against the government of Libya, or any

of its agencies or an officer and employee of the Libyan government.  Section 2337 clearly bars

the claims asserted by LRA.


## VIII.   THE COURT SHOULD DECLINE TO HEAR THIS CASE BASED ON "FORUM NON CONVENIENS"

Most recently, the D.C. Circuit held that an alternative forum, even though the remedy

may have not been adequate or equal to the United States standards, did not rule out the

dismissal of the case based on *forum non conveniens* grounds. Nemariam v. The Federal

democratic Republic of Ethiopia, 315 F.3d 390, 395 (2003).

LRA's complaint is without mention of any attempts for recovery in the Courts of other

nations.  Undersigned counsel, however,  has been able to determine, without more specificity,

that LRA has previously filed suit based on the same allegations in foreign Courts

The Court should dismiss this case based on *forum non conveniens* grounds as this case

29

may be adjudicated in other courts.   In the alternative the Court, under Rule 12(e), Fed. R. Civ.

P., should issue an order directing a more definite statement regarding any claims by LRA before

other courts or tribunals.


## IX.    SERVICE ON ATTORNEY CONTRARY TO LAW

LRA, due to its inability to serve the individual defendants in their personal capacity

moved for an order directing alternative means for service of process. Despite the plaintiffs

concession that undersigned counsel did not represent the individual defendants in thir personal

capacity, the Court, on June 2, 2006, ordered "that, pursuant to Fed. R. Civ. P. 4(f)(3), service of

process may be made on . . . and the individual defendants in their personal capacities by mail to

Arman Dabiri, counsel of record for the Socialist People's Libyan Arab Jamahiriya and the

individual defendants in their official capacities."  The Court's Order is contrary to precedent in

this Circuit.  This Circuit has previously has held that officials could not be treated as foreign

state for purposes of personal jurisdiction under the FSIA where a plaintiff was suing an official

in his individual capacity.  I.T. Consultants, 351 F.3d at 1191-92.  The Court of Appeals further

rejected the plaintiff's argument case arguing that the minister, for purposes of service and

personal-jurisdiction, should be treated the same as the state and held that the position was

"inconsistent with the fundamental precept of Anglo-American jurisprudence that you cannot

have your cake and eat it, too:  [plaintiff] cannot simultaneously sue [the minister] in his

personal capacity and treat him as "a foreign state" for purposes of personal jurisdiction." Id.

Undersign Counsel raises the issue for further appellate review.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Libya's motion under Rule 12(b)(1) and (2), F.R.Civ.P., and dismiss this action for lack of subject-matter and constitutional personal jurisdiction over the defendants and, in the alternative, grant Libya's motion under Rule 12(b)(6), F.R.Civ.P., and dismiss the complaint for failure to state claims upon which relief can be granted.

Dated:          July 25, 2006                              Respectfully submitted,


                                                            _//s//_____
                                                            Arman Dabiri
                                                            Law Offices of Arman Dabiri
                                                                 & Associates, P.L.L.C.
                                                            1725 I Street, N.W.
                                                            Suite 300
                                                            Washington, D.C. 20006
                                                            Tel. (202) 349-3893
                                                            E-mail: armandab@worldnet.att.net

                                                            *Counsel for defendants*

31