# Exhibit E

LEXSEE 290 F. SUPP.2D 54

**ROBERT L. PUGH, et al., Plaintiffs v. SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., Defendants.**

**Civil Action No. 02-2026 (TPJ)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*290 F. Supp. 2d 54; 2003 U.S. Dist. LEXIS 19327*

**October 27, 2003, Decided**
**October 27, 2003, Filed**

**SUBSEQUENT HISTORY:** Appeal dismissed by *Pugh v. Socialist People's Libyan Arab Jamahiriya, 2004 U.S. App. LEXIS 24404 (D.C. Cir., Nov. 22, 2004)*

**DISPOSITION:** [**1] Defendants' motion to dismiss denied in part. Plaintiff Interlease's claims against defendant Libya, LESO, and individual defendants in their official capacities, dismissed with prejudice.

**COUNSEL:** For ROBERT L. PUGH, ANNE CAREY, SALLY CHISHOLM JOHNSON, DEBORAH VAUGHN SCHOOLING, JANA ELIZABETH TURLINGTON, JIMMY BRUCE TURLINGTON, CHRISTOPHER DARWYN TURLINGTON, DAVID ONLEY TURLINGTON, JAMES ELDEE TURLINGTON, JR., EDDIE DON TURLINGTON, JOYCE WRIGHT, RUSSELL TURLINGTON, MARY KATHRYN HASSETT, WILLIAM CARL SCHUTZIUS, CATHERINE ALEXANDRIA SCHUTZIUS, CHRISTOPHER MATTHEW SCHUTZIUS, JOHN BENEDICT SCHUTZIUS, ERMINE HAILEY, JAN PATILLO, MICHAEL HUFF, AMANDA HILL, JARED HILL, JANET WARNER, SUSAN WARNER, SHERRY WARNER, IOANA ALIMANESTIANU, IRINA ALIMANESTIANU, JOANNA ALIMANESTIANU, NICHOLAS ALIMANESTIANU, ALEXANDER ALIMANESTIANU, SERBAN ALIMANESTIANU, CALIN ALIMANESTIANU, PAULINE ALIMANESTIANO, CARLA J. MALKIEWICZ, THERESE CODDINGTON, MICHAEL [**2] J. CORDER, INTERLEASE, INC., plaintiffs: Michael Lee Martinez, Stuart Henry Newberger, CROWELL & MORING, L.L.P., Washington, DC.

For THE SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRYA, LIBYAN EXTERNAL SECURITY ORGANIZATION aka JAMAHIRIYA SECURITY ORGANIZATION, MUAMMAR QADHAFI, ABDALLAH SENOUSSI, AHMED ABDALLAH ELAZRAGH, IBRAHIM NAELI, ARBAS MUSBAH, ISSA ABDELSALAM SHIBANI, ABDELSALAM HAMMOUDA EL AGELI, defendants: Arman Dabiri Abkenari, Washington, DC.

**JUDGES:** Thomas Penfield Jackson, U.S. District Judge.

**OPINION BY:** Thomas Penfield Jackson

**OPINION:**

[*56] MEMORANDUM AND ORDER

On September 19, 1989, a DC-10 airliner operated by the French airline Union de Transports Aeriens ("UTA") as UTA Flight 772, departed Brazzaville, Congo, with 170 passengers enroute to Paris. The passengers were from 17 countries, including seven Americans. While flying over southeastern Niger, after a stopover in N'Djamena, Chad, UTA Flight 772 exploded in mid-air killing all aboard.

The 37 plaintiffs in this action - all of them American citizens - are the personal representatives of the estates of the seven Americans who died aboard UTA Flight 772, or their kinsmen, and the American corporate owner-lessor of the aircraft. [**3] n1 Drawing upon the results of an extensive investigation by French authorities into the circumstances of UTA Flight 772's demise, and ensuing judicial proceedings, both civil and criminal, in France, that allegedly determined the explosion to have resulted from an act of terrorism committed by officials and agents of the government of the Socialist People's Libyan Arab Jamahiriya ("Libya"), the American plaintiffs sue Libya, its intelligence service ("LESO") and seven individuals (including the Libyan head of state Muammar Qadhafi) for money damages for extrajudicial

290 F. Supp. 2d 54, *; 2003 U.S. Dist. LEXIS 19327, **

killings, aircraft sabotage, and personal injuries. Jurisdiction is predicated upon the Foreign Sovereign Immunity Act ("FSIA"), *28 U.S.C. § § 1330, 1602-1611 (2003)*, specifically *§ 1605(a)(7)*, and the so-called Flatow Amendment thereto, Pub. L. No. 104-208, Div. A, Title I, § 101(c), 110 Stat. 3009 (1996) (codified at *28 U.S.C. § 1605* (note)). n2

n1 The seven Americans who died on UTA Flight 772 and whose deaths are the basis for the claims brought in this lawsuit are: Bonnie Barnes Pugh, Margaret Elizabeth Schutzius, Mark E. Corder, James E. Turlington, Sr., Patrick Wayne Huff, Donald J. Warner, and Mihai Alimanestianu.

The corporate plaintiff is Interlease, Inc., a Georgia corporation.

[**4]

n2 According to plaintiffs, the French criminal investigation determined that the explosion originated in a suitcase bomb placed on board the plane at the direction of officials of the Libyan government in retaliation for French support of the government of Chad in a dispute with Libya.

The individual defendants were found to be the agents of the Libyan government and were convicted in absentia by a French court in March, 1999. Related civil proceedings to compensate the relatives of French citizens killed in the explosion and UTA's corporate parent, Air France, were settled by a payment by Libya to the French treasury in July, 1999.

I.

Defendants have moved to dismiss the complaint on five consolidated jurisdictional grounds pursuant to *Fed. R. Civ. P. 12(g)*. n3 They contend the Court is without personal jurisdiction over the individual defendants; lacks personal jurisdiction over the Libyan state on Due Process grounds under the United States Constitution; and has no subject matter jurisdiction under the FSIA to hear plaintiff Interlease's claims. [**5] They also assert that the Flatow Amendment does not create a private [*57] cause of action, and finally, argue that the case should be dismissed because the United States, and in particular the District of Columbia, is an inconvenient forum.

n3 No objection is made to either the sufficiency of process or the service thereof, and the defendants are therefore deemed to have waived any such objections by operation of *Fed. R. Civ. P. 12(h)(1)(A)*. See *S.E.C. v. Cherif, 933 F.2d 403, 416 (7th Cir. 1991)*.

The majority of these contentions have been previously litigated and decided in earlier cases in this district, and at least one has been finally resolved by the D.C. Circuit. Defendants' argument that this Court cannot constitutionally exercise personal jurisdiction over the Libyan state was raised and expressly rejected in *Price v. Socialist People's Libyan Arab Jamahiriya, 352 U.S. App. D.C. 284, 294 F.3d 82 (D.C. Cir. 2002)* ("Price II") reversing in part and remanding *Frey v. Socialist People's Libyan Arab Jamahiriya, 110 F. Supp. 2d 10 (D.D.C. 2000)* [**6] ("Price I"). As the circuit court held in *Price II, 294 F.3d at 96*, "foreign states are not 'persons' protected by the *Fifth Amendment*," and "the *Fifth Amendment* poses no obstacle to the decision of the United States government to subject Libya to personal jurisdiction in the federal courts." *Id. at 99*.

The D.C. Circuit also identified, but did not resolve, an issue not raised by Libya in Price II, namely whether the Flatow Amendment in conjunction with *28 U.S.C. § 1605(a)(7)* actually creates a federal cause of action against a sovereign foreign state for acts of terrorism, and remanded the case to the district court for its initial consideration. See *Price II, 294 F.3d at 87*. The district court did so, concluding that Congress clearly intended to render foreign states as well as their agents liable for acts of terrorism, see *Price v. Socialist People's Libyan Arab Jamahiriya, 274 F. Supp. 2d 20, 26-32 (D.D.C. 2003)* ("Price III"), and its decision was consistent with the decisions of several other judges of this district court both before and after the D.C. Circuit's decision in Price II. See, e.g., *Kerr v. Islamic Republic of Iran, 245 F. Supp. 2d 59, 63 n.9 (D.D.C. 2003)*; [**7] *Cronin v. Islamic Republic of Iran, 238 F. Supp. 2d 222, 231-33 (D.D.C. 2002)*; *Elahi v. Islamic Republic of Iran, 124 F. Supp. 2d 97, 106 (D.D.C. 2000)*; *Cicippio v. Islamic Republic of Iran, 18 F. Supp. 2d 62, 67 (D.D.C. 1998)*. See also *Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 226 (S.D.N.Y. 2003)*. This Court sees no reason to depart from the decisions of its district court colleagues here and elsewhere construing *§ 1605(a)(7)* and the Flatow Amendment as providing a private cause of action for American citizens against foreign states for harm done to them by state-sponsored acts of terrorism. The Court observes, however, that the D.C. Circuit still regards the matter to be an open question. See *Roeder v. Islamic Republic of Iran, 357 U.S. App. D.C. 107, 333 F.3d 228, 234 n.3 (D.C. Cir. 2003)*.

290 F. Supp. 2d 54, *; 2003 U.S. Dist. LEXIS 19327, **

Defendants further argue that the case should be dismissed because the District of Columbia, U.S.A., is an inconvenient forum in comparison to France, where much of the evidence and many of the witnesses are currently to be found. France, however, has not waived the sovereign immunity of the Libyan state, and these [**8] plaintiffs would therefore be unable to bring their claims against Libya in that country. An alternative forum in which a plaintiff cannot recover is not an adequate alternative forum. See *Nemariam v. Fed. Democratic Republic of Ethiopia, 354 U.S. App. D.C. 309, 315 F.3d 390, 395 (D.C. Cir. 2003).*

II.

Two additional grounds for at least partial dismissal advanced by the defendants, however, warrant more careful consideration as the claims they address present novel issues of first impression. Defendants submit that the Court lacks personal jurisdiction over the individual defendants in their personal capacities, and that the Court lacks subject matter jurisdiction [*58] over the claims of the corporate plaintiff Interlease, Inc.

The *Due Process Clause* and the Individual Defendants

Unlike typical FSIA state-sponsored terrorism cases, this case presents claims against the seven individually named defendants in both their official and their personal capacities. n4 The individual defendants challenge in personam jurisdiction over the claims against them in their personal capacities on Due Process grounds.

n4 The individual defendants are Muammar Qadhafi, Abdallah Senoussi, Ahmed Abdallah Elazragh, Ibrahim Naeli, Arbas Musbah, Issa Abdelsalam Shibani, and Abdelsalam Hammouda El Ageli. All but Qadhafi are alleged to be officials, employees, or agents of LESO.

[**9]

*Section 1605(a)(7) of the FSIA* effects a limited waiver of the sovereign immunity of (and, as previously stated, creates an implicit cause of action against) a foreign nation itself in cases "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources ... for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency ..." *28 U.S.C. § 1605(a)(7)* (emphasis supplied). *Section 1605* Note, expressly extending personal liability to the officials, employees, and agents who commit the

terrorist acts, is similarly limited to acts committed in service to a sovereign state. In other words, by its own terms the FSIA limits its jurisdictional grant to suits against foreign states and individuals acting on their behalf in an official capacity. Assuming, therefore, that notwithstanding Price II the protections of the *Due Process Clause* still apply to individuals [**10] who are sued for terrorist acts, the *Due Process Clause* must presumably be satisfied before the Court may exercise in personam jurisdiction to impose civil liability upon the individual defendants for their personal conduct undertaken without state sponsorship.

Unlike foreign states, alien individuals, even suspected terrorists - at least those who have a "presence" in the United States - are still entitled after Price II to the protections of the *Due Process Clause of the United States Constitution.* See *Nat'l Council of Resistance of Iran v. Dep't of State, 346 U.S. App. D.C. 131, 251 F.3d 192, 204 (D.C. Cir. 2001).* And as will be shown infra, this Court concludes that the individual defendants do have a "presence" in the United States in a sense equivalent to a "minimum contact" with this country sufficient under the *Due Process Clause* to render them amenable to a civil judgment for money damages in an American court.

The *Due Process Clause* "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King v. Rudzewicz, 471 U.S. 462, 471-72, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)* [**11] (quoting *Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 90 L. Ed. 95, 66 S. Ct. 154 (1945)).* Of chief concern to courts conducting a Due Process analysis for jurisdictional purposes is maintaining a level of "predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).* To that end, the *Due Process Clause* has been read to limit a court's ability to exercise jurisdiction [*59] over an individual not physically present in the forum state to those situations in which the individual has such minimum contacts with the forum "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co., 326 U.S. at 316* (quoting *Milliken v. Meyer, 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339 (1940)).*

While the courts and legislatures have developed numerous approaches to ascertaining whether a defendant meets the "minimum contacts" test, the [**12] single most important consideration is whether a defendant's "conduct and connection with the forum State are such

290 F. Supp. 2d 54, *; 2003 U.S. Dist. LEXIS 19327, **

that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp., 444 U.S. at 297.*

Taking the factual allegations of the complaint as true for present purposes, the individual defendants in the instant action conspired to sabotage and succeeded in destroying a civilian commercial aircraft filled to capacity with innocent and unsuspecting passengers while in flight. As the plane they chose to destroy was on an international flight and expected to stop in several nations before reaching its final destination, the individual defendants could and should have reasonably postulated that passengers of many nationalities would be on board, from which they could also expect they might be haled into the courts of those nations whose citizens would die. Given the number of passengers on UTA Flight 772, and the international nature of the flight, it was also altogether foreseeable that some Americans would be aboard the plane, whose lives would be lost, and that the individual defendants would have to answer in some fashion in American [**13] courts for the consequences of their actions if their identities were ever discovered.

The interest of the United States in preventing and punishing international terrorism has been a matter of worldwide common knowledge for years. Congress has not been indifferent to providing judicial sanctions for terrorist acts committed abroad. Beginning at least five years before the UTA Flight 772 bombing, a succession of federal statutes had evinced an intent to assure the criminal prosecution of foreign individuals who committed terrorist acts overseas against U.S. persons or property. The Act to Combat International Terrorism, *18 U.S.C. § 3071 (1984)* provided rewards for information leading to the arrest or conviction of terrorists found in any country. The Hostage Taking Act, *18 U.S.C. § 1203 (1984)* imposed criminal penalties upon those who take Americans hostage irrespective of where they are taken hostage. The Aircraft Sabotage Act, *18 U.S.C. § 32 (1984)* made the destruction of foreign civil aircraft a federal crime so long as at least one American was aboard. The Antiterrorism Act, *18 U.S.C. § 2332 (1986)* [**14] prescribed inter alia, the death penalty for the murder of a U.S. citizen outside the United States.

These criminal statutes all contemplated the assertion by a United States court of jurisdiction over a foreign national for terrorist activities committed abroad, irrespective of the number and nature of that individual's other "contacts" with the United States. It logically follows that if federal courts may constitutionally exercise criminal jurisdiction over such individuals, the Constitution should be no bar to those same federal courts, in a civil action for damages, exercising civil in personam jurisdiction over those same individuals for the same acts.

Thus, in light of the pre-existing statutory authority providing for the criminal prosecution of those who carry out terrorist acts, and the defendants' intentional [*60] targeting of foreign nationals at the risk of killing Americans among them, defendants should have anticipated the possibility of being "haled into court" in the United States in some capacity. And because they should have anticipated as much, this Court concludes that it may constitutionally exercise personal jurisdiction over the individual defendants [**15] in their personal capacities without offending any "traditional notions of fair play and substantial justice." *Milliken v. Meyer, 311 U.S. at 463.*

Claims of the Corporate Plaintiff

Plaintiff Interlease, Inc., a Georgia corporation, owned the airplane that was destroyed in the bombing of UTA Flight 772. At the time of the bombing Interlease had leased the plane to UTA. Interlease asserts three claims arising out of the destruction of its aircraft: the conventional tort claims of conversion and tortious interference, and a statutory claim made under *18 U.S.C. § 2333 (2003)*, allowing recovery of civil damages by nationals of the United States that are injured in property or business by reason of an act of international terrorism.

Defendants argue that Interlease's claims should be dismissed for failure of subject matter jurisdiction: the conversion and tortious interference claims, they say, are not actionable because *§ 1605(a)(7) of the FSIA* does not purport to abrogate sovereign immunity for claims by corporations for property damage and the claim under *18 U.S.C. § 2333* is barred by *18 U.S.C. § 2337 (2003)* [**16] , which states: "No action shall be maintained under *section 2333* of this title [18 U.S.C.] against- (2) a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his or her official capacity or under color of legal authority." *18 U.S.C. § 2337(2).*

Plaintiffs concede that *28 U.S.C. § 1605(a)(7)* does not, in and of itself, confer subject matter jurisdiction on this Court to entertain Interlease's claims, but in conjunction with *28 U.S.C. § 1367*, they say, once having acquired original jurisdiction of the subordinate "claim," (i.e. the claims of the individual plaintiffs for personal injury or death of their respective decedents) which are cognizable in the *§ 1605(a)(7)* "case," the Court may then exercise supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case. n5 It is undisputed that Interlease's conversion and tortious interference claims grow out of the same case or controversy as the individual plaintiffs' claims.

290 F. Supp. 2d 54, *; 2003 U.S. Dist. LEXIS 19327, **

n5 *28 U.S.C. § 1605(a)(7)*: "A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case - (7) ... in which money damages are sought against a foreign state for personal injury or death ..." (emphasis supplied).

*28 U.S.C. § 1367(a)*: "... In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ..." (emphasis supplied).

[**17]

In addition to the tort and conversion claims, Interlease asserts a claim under *18 U.S.C. § 2333*, which provides for civil remedies for "any national of the United States injured in his ... property, or business" as a result of international terrorism. *18 U.S.C. § 2333(a)*. Jurisdiction under *§ 2333*, however, is limited by *18 U.S.C. § 2337(2)*. Defendants correctly argue that *§ 2337(2)* clearly precludes Interlease's claims under *§ 2333* against the Libyan state, LESO, and the individual [*61] defendants in their official capacities. However, as the Court has already found that it has personal jurisdiction over the individual defendants in their personal, as well

as their official capacities, there is nothing to bar Interlease from asserting its conversion and tortious interference claims against the individual defendants in their personal capacities. Accordingly, to the extent that Interlease's tort claims are limited to the individual defendants in their personal capacities, the Court concludes that they too may go forward.

It is, therefore, this 27th day of October, 2003,

ORDERED, that the defendants' motion [**18] to dismiss is denied in its entirety except as to any claims plaintiff Interlease may assert under *18 U.S.C. § 2333* against defendant Libya, LESO, and the individual defendants in their official capacities; and it is

FURTHER ORDERED, that all claims plaintiff Interlease may assert against defendant Libya, LESO, and the individual defendants in their official capacities, are dismissed with prejudice as barred by *18 U.S.C. § 2337(2)*; and it is

FURTHER ORDERED, that a status conference is scheduled for December 4, 2003, at 9:30 a.m., in Courtroom No. 2.

Thomas Penfield Jackson

U.S. District Judge

10-27-03