UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LA REUNION AERIENNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 05-1932 (HHK) |
| ) | |
| ) | |
| SOCIALIST PEOPLE'S LIBYAN ) | |
| ARAB JAMAHIRIYA, *ET AL.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS**

Defendants (hereafter "Libya") replies to plaintiff's (hereafter "LRA") opposition to Libya's motion to dismiss for lack of subject-matter jurisdiction, Constitutional personal jurisdiction, and in the alternative for failure to state a claim on which relief can be granted seriatim.

**I.**   *Collateral Estoppel*

LRA commences its opposition by a long and mostly irrelevant discussion in support of an erroneous assertion that the Court should not grant Libya's motion to dismiss based on the doctrine of "collateral estoppel" due to the litigation in the matter of Pugh v. Socialist People's Libyan Arab Jamahiriya, Civil Case No. 02-2026 (HHK) (hereafter "Pugh").  A quick review of its definition of collateral estoppel is necessary:  "**1.** The binding effect of a judgment as to matters actually litigated and determined in one action on later controversies between the parties involving a different claim from that on which the original judgment was based.  **2.**  A doctrine barring a party from relitigating an issue determined against that party in an earlier action, even if the second action differs significantly from the first one."  Black's Law Dictionary, 8th Ed. at

279.

LRA then goes on to correctly identify the requirements of collateral estoppel and issue preclusion. The Court can, however, easily ignore LRA's request for collateral estoppel for two reasons. Each one of the reasons below are fatal to LRA's erroneous collateral estoppel argument.

The doctrine of collateral estoppel is only applicable when a party is attempting to relitigate an issue already determined in a prior litigation or the binding effect of a judgment as to matters actually litigated. *Id*. The issue of whether a foreign (French) insurance company, based on claims under commercial contracts, can bring suit against individual defendants in their personal capacities (who have never been served and have no contacts with the United States) has never been decided by any Court or in the matter of Pugh. LRA's assertion that the issue has been previously decided in the Pugh matter can only be based on a complete failure to understand the issue before the Court.

LRA's collateral estoppel assertion also fails as the parties in Pugh and the instant case are also not the same. LRA's rights are not the same, nor are the based upon the same rights or the same jurisdictional grounds as the individual claimants or Interlease in Pugh.

Thus the Court should dismiss LRA's collateral estoppel argument as the issue of the claims against the individual defendants in their personal capacity by a French insurer has not been previously litigated or decided.

## II.     Libya's Removal from List Terminates Jurisdiction

LRA opposition to Libya's motion to dismiss on the grounds of Libya's reinstatement of its sovereign immunity is mostly based on the decision in <u>Kilburn v. Socialist People's Libyan Arab Jamahiriya</u>, 376 F.3d 1123 (D.C. Cir. 2004)

The District Court's reliance in <u>Kilburn</u> on <u>Acree v. Republic of Iraq</u>, 370 F.3d 41 (D.C. Cir. 2004) to deny Libya's motion to dismiss for lack of subject-matter jurisdiction due to its reinstatement of sovereign immunity was misplaced. The holding in <u>Acree</u> is *clearly gratis dictum*. Even if the holding in <u>Acree</u> is not *dicta* it is unquestionable that the <u>Acree</u> Court failed to follow Supreme Court precedent as to whether the language of <u>28 U.S.C. § 1605(a)(7)</u> was misinterpreted.

The language that is quoted in <u>Kilburn</u> from the <u>Acree</u> decision does not support the conclusion of the District Court. The language in Acree, in relevant part holds:

> Thus, the FSIA specifically provides that when a country, once designated as a state sponsor of terrorism, is subsequently restored to good standing, that country is still amenable to suit <u>for acts that took place prior to the restoration of its sovereign immunity</u>. (Emphasis added).

<u>Id</u>. The Court in <u>Acree</u> speaks to acts "that took place prior to restoration of . . . sovereign immunity". <u>Id</u>. Libya, at the time of the alleged period in question during 1989 enjoyed full sovereign immunity as the terrorism exception to sovereign immunity was not added to the FSIA until 1996. In 1996, as part of the comprehensive Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, §221(a), 110 Stat. 1214 (Apr. 24, 1996) (1996 Amendment), Congress amended the FSIA to add a new exception to immunity where money damages are

sought against foreign states that have been designated as state sponsors of terrorism by the Secretary of State. Suit then could be brought under the 1996 Amendment for *personal injury* or *death* caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act. 28 U.S.C. § 1605(a)(7); *see* Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 87 (D.C. Cir. 2002).

      The issue of the removal of a sovereign state from the State Department's list of state sponsors of terrorism was not before the Court in Acree. There the issue was whether § 1503 of the Emergency Wartime Supplemental Appropriations Act (hereafter "EWSAA"), which was enacted by Congress in April 2003 after United States' military action in Iraq, suspended the application of any provisions of the Iraq Sanctions Act of 1990. Acree, 370 F.3d at 46. The issue of a Iraq's removal from the State Department's list of state sponsors of terrorism was not before the Court in Acree.

      The language of § 1605(a)(7) also does not support the holding in Kilburn. That section only speaks to when a Court is vested with subject-matter jurisdiction and when a Court must decline to take subject-matter jurisdiction. *Id*. The language of the statute does not address the issue of when a Court is deprived of subject-matter jurisdiction. Kilburn is also distinguishable from the instant case as the Court in Kilburn had held that it could exercise subject-matter jurisdiction long before the President's declaration in May of 2006 and Libya's subsequent removal from the State Department's list of state sponsors of terrorism. In this case, Libya's sovereign immunity was restored prior to this Court deciding its own competence.

      Finally, the Supreme Court has recently reaffirmed the doctrine that "when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall".

Bruner v. United States, 343 U.S. 112, 116-117 (1952). That holding was recently reaffirmed in Landgraf v. USI Film Products, 511 U.S. 244, 275 (1994). The Court, in relevant part, held:

> We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed. Thus in Bruner . . . relying on our 'consisten[t]' practice, we ordered an action dismissed because the jurisdictional statute under which it had been (properly) filed was subsequently repealed. . . . Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case. . . Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties. (Emphasis added - internal citations omitted).

*Id*. Consequently, the Court lacks subject-matter jurisdiction due to Libya's reinstatement of Libya's sovereign immunity.

**III.    LRA's Claims Do Not Come Under Any Exception to Sovereign Immunity**

Even assuming that Libya's reinstatement of sovereign immunity does not deprive the Court of Subject-matter jurisdiction, LRA's claims fail to meet any of the exceptions to sovereign immunity under the FSIA.

LRA commences by asserting that as the plaintiffs in the matter of Pugh were American Citizens and thus LRA has satisfied the nationality requirement of the FSIA under § 1605(a)(7)(B)(ii).

It would seem that has LRA has repeatedly confused the identity of the plaintiffs in Pugh with its own. LRA in the instant case is unquestionably both the claimant and the victim as it concedes that its rights are based on subrogation. LRA seeks to "recover monies it paid as a result of explosion of the Aircraft" based on insurance contracts with the plaintiffs in Pugh not

for the actual death of the decedents in <u>Pugh</u>. (Plt. Opp. at 2). LRA is also not acting as a legal agent of Interlease or as an estate representative of the decedents in <u>Pugh</u>. The injury in this case is based on the payment of money by LRA due to insurance contracts. LRA unquestionably does not meet the nationality requirement of § 1605(a)(7) and the Court should, based on this reason alone, dismiss the entire suit against Libya.

LRA then relies on the decision in <u>Hartford Fire Insurance Co., *et al.* v. The Socialist People's Libyan Arab Jamahiriya, *et al.*,</u> Civil Action No. 9803096 (D.D.C. Sept. 22, 1999). There the Court held that an action by an assignee or subrogee could be sustained.

The <u>Hartford</u> decision has yet to be reviewed by a higher Court and is clearly erroneous. First, the <u>Hartford</u> Court held that § 1605(a)(7) should be read more broadly than its plain language, so as to encompass "third party claims for indemnity and contribution". The <u>Hartford</u> Court's approach to the FSIA and its expansion of the exception to sovereign immunity by the Court (as opposed to Congress) has now been affirmatively rejected by the Court of Appeals in <u>Cicippio-Puleo v. Islamic Republic of Iran</u>, 353 F.3d 1024 (D.C. Cir. 2004). There the Court admonished that the "ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." <u>Id</u>. at 1033. <u>Hartford</u> clearly failed to abide by this rule and the holding there clearly went beyond the language and the intent of Congress in enacting the 1996 Amendment to the FSIA.

Second, the <u>Hartford</u> Opinion held that "[t]he text of the statute, the starting pont of the inquiry, is indeterminate." to impermissibly expand the language of § 1605(a)(7). (1999 Mem. Op. at 4). The Court turned to the legislative history of the 1996 Amendment to the FSIA because it found that the statute's "text is ambiguous". <u>Id</u>. at 5.

The Court of Appeals has now held to the contrary. In Cicippio the Court of Appeals also held that the statutory language of § 1605(a)(7) is clear. *Id*. at 1034. The Court went so far as to explicitly hold that "[t]he legislative history [of § 1605(a)(7)] is largely irrelevant, however, because the statutory language is clear." Although the Cicippio case mainly dealt with whether the parties in that case could rely upon the 1996 Amendment and the Flatow Amendment for a private federal cause of action against a foreign state (the government of Iran in that case), the holding of the Court of Appeals regarding the language of the statute is on point and should be considered intervening authority. The decision is Hartford, however, is neither binding or controlling for this Court.

Generally, a Court should look to legislative history for guidance when the enacted text of a statute is capable of two reasonable readings, or when no one path of meaning is clearly indicated. It is now accepted that "where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meaning need no discussion." Caminetti v. United Sates, 242 U.S. 470 (1917). It is the duty of the Court "to give effect, if possible, to every clause and word of a statute. " United States v. Menascheu, 348 U.S. 528, 538-539 (1955) (quoting Montclair v. Ramsdell, 107 U.S. 147, 152 (1883)); *see also* Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing this rule as a "cardinal principle of statutory construction"); Duncan v. Walker, 533 U.S. 167, 174 (2001). Thus the Hartford Court should not have gone to the legislative history and should have dismissed Hartford's claims for lack of subject-matter jurisdiction based solely on the language of § 1605(a)(7).

Assuming that the "ambiguity" argument in Hartford remains valid and a review of legislative history is required, there has also been intervening authority dealing with the

legislative history of the 1996 Amendment to the FSIA. The <u>Hartford</u> Court, upon reviewing H.R. Rep. No. 383, 104th Cong., 1st Sess., 1996 at 181 (1995), concluded that for determining the principal statutory purpose of the 1996 Amendment to the FSIA, that third-party actions for indemnity and contribution could vest the Court with subject-matter jurisdiction over Libya.[1] (1999 Mem. Op. at 5).

The <u>Hartford</u> Court's memorandum opinion, however, does not cite the paragraph in full and omits the judiciary committee report's specific reference to grant of jurisdiction to United States courts. <u>Id</u>. To determine the legislative intent it bears that the paragraph, in its entirety, be reviewed:

> **AMENDING THE FOREIGN SOVEREIGN IMMUNITIES ACT**
> Also responding to the tragedy of the Pan Am 103 bombing is section 804, which would amend the Foreign Sovereign Immunities Act (28 U.S.C. §§ 1602, *et seq.*) to permit suits by U.S. nationals against foreign states in U.S. courts. **Jurisdiction would be granted to such suits seeking money damages for personal injury or wrongful death** caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or providing material support or resources for such acts. The lawsuit must allege that the terrorist act was undertaken by an ''official, employee or agent'' of a foreign country, or acting on behalf of, or at the insistence of, a foreign country's leadership or hierarchy. **It is expected that a lawsuit proceeding under this section will be brought either by the victim, or on behalf of the victim's estate in the case of death or mental incapacity**.

(Emphasis added). H.R. Rep. No. 383, 104th Cong., 1st See., 1996 at 62 (1995). The judiciary committee report specifically states that the statute permits suits for personal injury or wrongful

---

[1] The Court should note that the citing by the <u>Hartford</u> Court of H.R. Rep. No. 383, 104th Cong., 1st Sess., 1995 at 181 (1995) in its Memorandum Opinion of September 23, 1999 was inaccurate. Pages 180 to 182 of the judiciary committee report deal with "Using secret evidence to deport aliens—A threat to due process".

death.  It does not speak to third-party claims.  It also indicates that the suits may be brought by the victims or by victim's estate.  The legislative history, as reported in the judiciary committee report, is consistent with the clear language of § 1605(a)(7) and does not permit third party insurer claims.

Most recently, the committee conference report relating to the 1996 Amendment to the FSIA was reviewed by our Circuit.  The conference report represents the final statement of terms agreed to by both houses of Congress and, next to the statute itself, "it is the most persuasive evidence of congressional intent."  Norman J. Singer, Statutes and Statutory Construction, § 48:08 at 448 (6th ed 2000).  *See* R.G. Johnson Co., Inc. v. Apfel, 172 F.3d 890 (D.C. Cir. 1999); Resolution Trust Corp. v. Gallagher, 10 F.3d 416 (7th Cir. 1993).

The conference committee report, which was specifically cited in the decision of the Court of Appeals in Cicippio, 353 F.3d at 1035,  must also be reviewed in full for a determination of legislative intent behind the 1996 amendment to the FSIA:

> **Subtitle B—Jurisdiction for Lawsuits Against Terrorist States**
> This subtitle provides that nations designated as state sponsors of terrorism under section 6(j) of the Export Administration Act of 1979 will be amenable to suit in U.S. courts for terrorist acts.  It **permits U.S. federal courts to hear claims seeking money damages for personal injury or death** against such nations and arising from terrorist acts they commit, or direct to be committed, against American citizens or nationals outside of the foreign state's territory, and for such acts within the state's territory if the state involved has refused to arbitrate the claim.

(Emphasis added) H.R. Conf. Rep. No. 104-518, at 112 (1996).  Both the judiciary committee report and the conference committee report show that the congressional intent was to remove the immunity of designated foreign states unde § 1605(a)(7) only when United States citizens are seeking money damages for personal injury or death.  This in conformity with the unambiguous

language of § 1605(a)(7). There is no conflict between the judiciary committee report cited by the Court in its 1999 memorandum opinion and the conference committee report which was cited the by the Court of Appeals in Cicippio. The entire reasoning of the Court in Hartford and its decision to expand the scope of the FSIA are erroneous and this Court should decline to follow the holding.

For the foregoing reasons, the Court lacks subject-matter jurisdiction to consider the claims of LRA, a third party claimant, as all of LRA's claims fall outside of any exception under the FSIA.

### IV. The Court Lacks Subject-Matter Jurisdiction Over Claims by Interlease

LRA argues that the Court may take subject-matter jursidcition of claims by LRA based on the claims of Interlease in the matter of Pugh by quoting the solely the following from that decision: "the court may then exercise *supplemental jurisdiction* over all other claims that are so related to claims in the action within such original jurisdiction that they from part of the same case." Pugh, 290 F.Supp.2d at 60. LRA would have done well to have read the entire opinion of the Court in Pugh. The Court in Pugh further held:

> ORDERED, that the defendants' motion to dismiss is denied in its entirety except as to any claims plaintiff Interlease may assert under 18 U.S.C. § 2333 against defendant Libya, LESO, and the individual defendants in their official capacities; and it is

> FURTHER ORDERED, that all claims plaintiff Interlease may assert against defendant Libya, LESO, and the individual defendants in their official capacities, are dismissed with prejudice as barred by 18 U.S.C. § 2337(2).

Id. at 61. The dismissal of all claims based on sovereign immunity is further confirmed

by the Order of the United States Court of Appeals for the District of Columbia Circuit when it dismissed Libya's appeal for lack of jurisdiction.  The Court of Appeals, in relevant part, held:

> When a defendant moves to dismiss on the ground of sovereign immunity, a district court judgment denying the motion is a collateral order and is immediately appealable. *Princz v. Federal Republic of Germany*, 998 F.2d 1, 1 (D.C. Cir. 1993). Here, the district court granted the motion to dismiss insofar as it asserted claims of sovereign immunity, ordering that "*all claims* plaintiff Interlease may assert against defendant Libya, LESO, and the individual defendants in their official capacities, are dismissed." *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54, 61 (D.D.C. 2003) (emphasis added). This court is therefore without jurisdiction to hear the appeal.

Pugh v. Socialist People's Libyan Arab Jamahiriya, Docket No. 03-7172 (D.C. Cir. 2004).  A true copy of the Court of Appeals Order is enclosed as Exhibit A for the Court's review. It is clear that LRA's argument is without merit and that the Court in Pugh dismissed all claims by Interlease based on sovereign immunity and the decision was confirmed by the Court of Appeals.

     LRA's argument that the Court may exercise subject-matter jurisdiction over claims of Interlease pursuant to supplemental jurisdiction under 28 U.S.C. § 1367 also demonstrates a complete ignorance of every case ever filed under the FSIA.  LRA cannot turn a blind eye to the binding Supreme Court precedent establishing that the FSIA provides the sole source of subject-matter jurisdiction in suits against a foreign state.  Argentine Republic, 488 U.S. at 434-39.  It is unclear whether LRA fails to grasp the meaning of the word "sole" which precludes subject-matter jurisdiction based on any provision other than the FSIA or whether LRA mistakenly believes § 1367 to be a part of the FSIA.  The basis of LRA's error is, however, irrelevant as it is unsupported by law and the Court should dismiss all claims by LRA brought pursuant to the

11

claims of Interlease in Pugh which were dismissed in their entirety.

## V. Constitutional Personal Jurisdiction Over Individual Defendants

Libya respectfully refers the Court to the issue in its motion to dismiss. Libya must reiterate that in this case the individual defendants have no contacts with the United States in any form and LRA is a foreign insurer. Furthermore, LRA's reliance on Pugh is misplaced as the issue as that case is not controlling in this instance.

## VI. Personal Jurisdiction Over Libya

Libya has only raised the issue in its motion to dismiss to preserve the issue for further appellate review.

## VII. Head of State Immunity

LRA concedes that the Court in this case should await the outcome of the inquiry in the matter of Pugh and a definitive statement of interest to be filed regarding the issue of head-of-state immunity by the United States Government. No further comment is required.

## VIII. Punitive Damages

As LRA's arguments in its opposition are entirely confused and nonsensical Libya respectfully refers the Court to its motion to dismiss on the issue. Libya reiterates that LRA may not seek rights which are greater than the "monies it paid as a result of the explosion of the Aircraft". Although LRA's complaint was ambagious as to whether it sought punitive damages against Libya (and LESO), its opposition to Libya's motion to dismiss makes it clear that LRA

has abandoned any such claims.

## IX.     Individual Defendants

Libya will not restate its entire argument in relation to the issue of the liability of the individual defendants in their personal capacity and respectfully refers the Court to its motion to dismiss on that issue.  Transaero v. La Fuerza Aerea Boliviana, 30 F.3d 148, 153 (D.C. Cir. 1994) ( "[a]ny government of reasonable complexity must act through men organized into offices and departments") is controlling and on point in this case.  As LRA claims do not fall within any exception to sovereign immunity under the FSIA (as well as being prohibited by the nationality requirement of § 1605(a)(7), the Court must also dismiss all claims against the individual defendants.

## X.      Failure to Adequately Plead Causes of Action

LRA's opposition asserts that state causes of action were asserted pursuant to the laws of the states where the decedents in Pugh were domiciled at the time of their death and the state of Interlease's domicile. (Plt. Opp. at 21).  However, LRA fails to assert causes of action with any particularity and relies purely on generic common law.

The issue and the progeny of cases dealing with the issue of pleading requirements can best be summarized by the Memorandum Opinion of the Honorable Judge Henry H. Kennedy, Jr., United States District Judge for the District of Columbia in the matter of Pugh v. Socialist People's Libyan Arab Jamahiriya, Civil Case No. 02-2026 (May 12, 2006).  The Memorandum Opinion, in dealing with an almost identical assertion by the plaintiffs in that case, in relevant

part, held:

>   While plaintiffs may properly state a claim against defendants under state law, the court nonetheless denies plaintiffs' motion for partial summary judgment. Plaintiffs' motion seeks partial summary judgment as to liability alone. As plaintiffs note, "the starting point for such an analysis is the District of Columbia's choice of law principles." However, plaintiffs argue that the court "need not, in the first instance, engage in a state-by-state analysis of the various causes of action, as asserted by each plaintiff" because the claims asserted—wrongful death and intentional infliction of emotional distress—are "fairly uniform in every state." Rather, plaintiffs argue that "[i]t is enough at this stage for the Court to conclude—as it must—that the undisputed material facts establish the Defendants' liability."
>   Essentially, plaintiffs ask the court to ignore the choice-of-law analysis necessary to determine which state's law applies and hold that defendants would be liable under *every* state's law. The court declines this invitation, as it was foreclosed by the D.C. Circuit's opinion in *Acree*. In *Acree*, the D.C. Circuit rejected the plaintiffs' claims that the "traditional torts of assault, battery and intentional infliction of emotional distress in their generic form" were sufficient to impose liability on defendants. 370 F.3d at 59. Rather, the court required plaintiffs to "identify a particular cause of action arising under a specific source of law." *Id.* Plaintiffs failed to do so in their submissions to the court.
>   Moreover, the D.C. Circuit, in *Cicippio-Puleo* and *Acree*, suggested that a plaintiff cannot rely on their submissions to identify that "particular cause of action," but rather must do so *in their complaint*. In *Cicippio-Puleo*, the D.C. Circuit, after rejecting the plaintiffs' use of the Flatow Amendment as a cause of action against the foreign state, remanded the case "to allow plaintiffs an opportunity to *amend their complaint* to state a cause of action under some other source of law," including state law. 353 F.3d at 1027 (emphasis added). Several months later, the D.C. Circuit reviewed a complaint in a similar case that, like plaintiffs here, asserted tort claims "in their generic form." *Acree*, 370 F.3d at 59. At oral argument, the court pressed the plaintiffs to identify the source of law upon which their claims were based. Counsel reiterated their reliance on "generic common law torts." *Id.* Having failed to identify a particular cause of action, the D.C. Circuit dismissed the case, stating that it found "no cause to remand this case to the District Court in order to allow appellees to *amend their complaint* to state a cause of action under some other source of law." *Id.* at 59–60 (emphasis

> added).
> Based on these cases, some district courts in this jurisdiction have held that a plaintiff in a FSIA case is required to identify, in their complaint, their state law claims with particularity. *See Dammarell*, 2005 U.S. Dist. LEXIS 5343, at *4–5; *Welch v. Islamic Republic of Iran*, 2004 U.S. Dist. LEXIS 19512, at *13–16 (D.D.C. Sept. 27, 2004). These cases have allowed the plaintiffs to amend their complaint to accomplish such a result. Here, plaintiffs' complaint alleges nothing more than the "generic common law torts" of wrongful death and intentional infliction of emotional distress. Based on the language in *Acree* and Cicippio-Puleo that suggests that a FSIA complaint must allege more in order to survive a motion to dismiss, the court concludes that plaintiffs must amend their complaint if they wish to proceed.

*Id.* at 28-30. (Internal citation to plaintiffs' brief omitted). The above referenced opinion the Court is well reasoned and follows binding precedent on an identical issue from the District of Columbia Court of Appeals. Libya will not repeat its entire argument in instant reply and respectfully refers the Court to itself.

Libya will not restate its entire arguments relating to causes of action pursuant to the FSIA and 18 U.S.C. § 2333 and respectfully refers the Court to its opening motion.

## XI.   Forum Non Conveniens

LRA's opposition to Libya's motion to dismiss does not deny that it is pursuing suits against identical defendants as in the above captioned case before other forums. At minimum, the Court should order LRA to submit a more definite statement so that Libya may properly analyze the issue of whether any such forum affords LRA a remedy.

**XII.**     **Individual Defendants in Personal Capacities Not Properly Served**

LRA arguments that service is for the individual defendants in their personal capacity on undersigned counsel are without merit at best and should be ignored. In all cases cited, the Courts allowed service on attorneys which represented the same defendants in their personal capacities in criminal matters and were in contact with the individuals in question.

Undersigned counsel is not the attorney fo record for the individual defendants in the personal capacity. Undersigned counsel has not been retained by the individual defendants in their personal capacity, has no means of communicating with the individual defendants in their personal capacity, cannot notify the individual defendants of the instant suit and <u>may not</u> be forced to represent the individual defendants in their personal capacity without actually being retained.[2] The Court's previous order directing that service may be made on undersigned counsel is unquestionably erroneous and is being raised for the purpose of future review. LRA and the Court (respectfully) may not ignore the distinction between officials of a foreign sovereign state (which the undersigned does represent as part of the Libyan Government) and individuals in their personal capacity. Libya respectfully further refers the Court to that issue in its motion to dismiss.

---

[2] The Court may note that undersigned counsel, in <u>Pugh</u>, has only appeared on behalf of the individual defendants in their personal capacity due to the failure to indicate, in the notice of appearance, that counsel was not appearing on behalf of the individual defendants in their personal capacity. The Court in that matter ruled (from the Bench) that by making a general appearance the issue of service on the individual defendants in their personal capacity was waived.

**CONCLUSION**

For the foregoing reasons, the Court should grant Libya's motion to dismiss under Rule 12(b)(1) and (2), F. R. Civ. P., and dismiss this action for lack of subject-matter and constitutional personal jurisdiction over the defendants and, in the alternative, grant Libya's motion under Rule 12(b)(6), F. R. Civ. P., and dismiss the complaint for failure to state claims upon which relief can be granted.


Dated:     October 13, 2006                             Respectfully submitted,


                                                          //s//
                                                        Arman Dabiri
                                                        Law Offices of Arman Dabiri
                                                              & Associates, P.L.L.C.
                                                        1725 I Street, N.W.
                                                        Suite 300
                                                        Washington, D.C. 20006
                                                        Tel. (202) 349-3893
                                                        E-mail: armandab@worldnet.att.net

                                                        *Counsel for defendants*