**Exhibit F**

<u>RELEASE OF ALL CLAIMS</u>                    1 1 OCT. 1991

FOR AND IN CONSIDERATION of the payment of the sum of
ONE HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY ($132,920)
DOLLARS, representing the U.S. Dollar equivalent of 100,000
Special Drawing Rights (SDRs) at the conversion rate of 1 SDR
equals 1.3292 U.S. Dollars, plus fees and expenses incurred in
this matter, including attorneys fees, in the amount of FORTY SIX
THOUSAND FIVE HUNDRED TWENTY TWO ($46,522) DOLLARS, representing
the U.S. Dollar equivalent of 35,000 SDRs, for a total of ONE
HUNDRED SEVENTY NINE THOUSAND FOUR HUNDRED FORTY TWO ($179,442)
DOLLARS, receipt of which is hereby acknowledged, the
undersigned, on behalf of the undersigned and all and each of
their respective heirs, executors, administrators; successors,
and assigns (the undersigned, on behalf of themselves and all and
each of their respective heirs, etc., are hereinafter
collectively referred to as "Releasors"), hereby release, acquit,
forever discharge, and covenant to hold harmless UTA (also known
as Union de Transports Aeriens), La Reunion Aerienne, Airclaims,
Inc., and all and each of their respective officers, directors,
agents, employees, insurers, coinsurers, and reinsurers (UTA, La
Reunion Aerienne, Airclaims, Inc., and all and each of their
respective officers, etc. are hereinafter collectively referred
to as "Releasees") of and from any and all actions, causes of
action, suits, debts, sums of money, covenants, contracts,
controversies, agreements, promises, damages (including, but not
limited to, compensatory and punitive damages), judgments,
executions, claims, and demands whatsoever, known and unknown,
including, but not limited to, subrogated or assigned rights,
that against the Releasees the Releasors ever had, now have, or
can, shall, or may have for, upon, or by reason of any matter,
cause, or thing whatsoever relating to or arising out of the
following (hereinafter referred to as "the above described
Matter"):  wrongful death of and personal injuries to Mihai
Alimanestianu, whether assertable by the heirs or personal
representative of Mihai Alimanestianu or by anyone else, and
whether characterized as wrongful death claims, survival, or
survivorship claims, or otherwise; loss or destruction of, or
damage to, the baggage or other property of Mihai Alimanestianu;
amounts paid by Mihai Alimanestianu for transportation; and any
and all other losses, damages and/or injuries relating to or
arising out of Mihai Alimanestianu having been a passenger on UTA
Flight 772, which was destroyed on September 19, 1989.

The Releasors hereby represent and warrant that the
respective relationships listed beneath the undersigneds'
signatures are true, that there are no heirs at law other than

those whose signatures appear below, and that there is no
Executor, Executrix, Administrator, Administratrix or other
Personal Representative of the Estate of Mihai Alimanestianu
other than the undersigned Executrix Ioana Alimanestianu.

The Releasors hereby represent and warrant that no claim has
been, or will be, made for worker's compensation benefits
relating to or arising out of the above described Matter and that
there are no liens for worker's compensation payments.

The Releasors, in their individual capacity, have requested
Ioana Alimanestianu, in her capacity as Executrix of the Estate
of Mihai Alimanestianu, not to bring an action against the
Releasees but rather to settle any and all claims in accordance
with the terms of this Release.

Releasor Ioana Alimanestianu represents that she has been
granted Letters Testamentary by the Surrogate's Court of New York
County to act as Executrix of the estate of Mihai Alimanestianu,
and that she has the authority to execute this release on behalf
of the estate from said court.

FOR AND IN FURTHER CONSIDERATION of the payment described
above, the Releasors agree as follows:

1.  Without limiting any of the foregoing, the payment
described above and this Release are intended to, and Releasors
represent and warrant that it will, dispose of all liability of
Releasees, and each of them, to Releasors and to any and all
third parties (whether an individual, company, government,
government agency, other government entity, or other entity)
relating to or arising out of the above described Matter.  The
Releasors agree to protect, indemnify, and hold harmless
Releasees from and against any and all actions, causes of action,
suits, damages, judgments, claims, demands, liens, and liability
of any nature whatsoever (including, but not limited to, liens or
liabilities relating to or arising out of any worker's
compensation payments), and from and against all costs and
expenses (including, but not limited to, reasonable attorneys'
fees) in defending such actions, etc., by or to any third
parties, relating to or arising out of the above described
Matter, whether anticipated or unanticipated, however caused and
whether by negligence or otherwise.

2.  Releasors hereby assign, transfer, and set over by
way of subrogation to Releasees, their successors and assigns,

- 2 -

all of Releasors' rights, title, and interests in and to any and
all actions, causes of action, claims, demands and remedies that
Releasors have or may have against any and all third parties who
may be liable for the above described Matter and/or the
destruction of the aforesaid UTA Flight 772, to the extent of the
amounts paid to Releasors pursuant to this Release plus
Releasees' costs and expenses (including, but not limited to,
attorneys' fees) incurred in the settling of the claims herein
and in obtaining any recovery against third parties.  The
Releasors hereby empower the subrogated Releasees to sue,
compromise, or settle in the place of the Releasors, and in the
name of the latter or in the Releasees' own names in accordance
with applicable law, in order for Releasees to recover for said
loss against any and all such third parties.  The Releasors
represent and warrant that they have not granted any release or
discharge other than this Release, nor waived any right, action,
cause of action, claim, demand or remedy that they have or may
have against any third party relating to or arising out of the
above described Matter and/or the aforesaid UTA Flight 772.

        3.  The payment described above and the execution of
this Release are the result of a compromise of a disputed claim
and shall not at any time for any purpose be considered as an
admission of liability or responsibility of the Releasees or any
of them for any wrongdoing, negligence, or other culpable conduct
in connection with the above described Matter and/or the
aforesaid UTA Flight 772.  The Releasors acknowledge that each of
the Releasees expressly continue to deny and disclaim such
liability and responsibility and intend merely to avoid
litigation and buy their peace.

        4.  Without limiting any of the foregoing, Releasees
are discharged and forever released from any and all further
claims and demands whatsoever by Releasors relating to or arising
out of the above described Matter and/or the aforesaid UTA Flight
772, and this Release shall apply to all unknown or unanticipated
results of the above described Matter and/or the aforesaid UTA
Flight 772, as well as those known and anticipated.  This Release
expresses a full settlement of a disputed claim as against
Releasees, and this Release is intended to avoid litigation and
to be final and complete.  This Release shall not be subject to
any claim of mistake of fact or law by the Releasors.

        5.  Releasors agree not to publicize, communicate, or
disclose to any third parties any information concerning the
dispute with Releasees, the payment described above, or the terms

- 3 -

of this Release without prior written permission from the Releasees, provided that nothing herein contained shall prevent Releasors from disclosing such information as required by applicable law.

This Release shall be governed by and construed under the laws of the State of New York. This Release may not be changed orally. This Release may be made and signed in separate counterparts and when signed by all of the undersigned the counterparts shall collectively constitute one instrument.

THE RELEASORS EXPRESSLY CONFIRM THAT THEY HAVE CONSULTED WITH THEIR LAWYERS CONCERNING THIS RELEASE AND HAVE BEEN FULLY ADVISED WITH RESPECT TO THEIR RIGHTS AND OBLIGATIONS HEREUNDER. THE RELEASORS HAVE CAREFULLY READ THE FOREGOING RELEASE, FULLY UNDERSTAND IT, AND ARE SIGNING VOLUNTARILY AND OF THEIR OWN FREE WILL.

Dated: 5/25/90 , 1990

Ioana Alimanestianu, Spouse of Mihai Alimanestianu, in her individual capacity and as Executrix of the Estate of Mihai Alimanestianu, deceased


Joanna Fulga Alimanestianu, Daughter of Mihai Alimanestianu


Mihai Nicholas John Alimanestianu, Son of Mihai Alimanestianu


Irina Nineta Alimanestianu, Daughter of Mihai Alimanestianu


Alexander Anthony Alimanestianu, Son of Mihai Alimanestianu

- 4 -

STATE OF *New York* )
COUNTY OF *Suffolk* ) ss.:

    On this _25_ day of _May_, 1990, before me, a duly commissioned and sworn Notary Public in and for the above State and County, did appear Ioana Alimanestianu, known to me as the spouse of Mihai Alimanestianu, the Executrix of the Estate of Mihai Alimanestianu, Deceased, and as the person whose name is subscribed in her individual and representative capacity to the foregoing Release of All Claims, who after being duly sworn by me, on oath stated that she has read the Release of All Claims, it is a correct and complete statement of the matters to which it relates, and all the contents thereof are true, complete, and correct.

    DIANE M. CARPENTER
  Notary Public, State of New York
      No. 4964038
   Qualified in Suffolk County
Commission Expires March 19, 19_92_

_Diane M. Carpenter_
        Notary Public

### Statement of Attorney

    I am an attorney licensed to practice law in the State of _New York_. I hereby represent and declare that I have fully explained the foregoing Release of All Claims to Ioana Alimanestianu, Executrix of the Estate of Mihai Alimanestianu, whom I represent, and she in turn acknowledged to me an understanding of said Release and the legal effect thereof; and the signature above her name on the Release was personally made by her.

_(signature)_
       Signature

_CHARLES F. KRAUSE_
   (Type or Print Name)

_140 E. 45th ST._
   (Street Address)

_N.Y. N.Y. 10017_
    (State)

- 5 -

## RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION of the payment of the sum of
ONE HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY ($132,920)
DOLLARS, representing the U.S. Dollar equivalent of 100,000
Special Drawing Rights (SDRs) at the conversion rate of 1 SDR
equals 1.3292 U.S. Dollars, plus fees and expenses incurred in
this matter, including attorneys fees, in the amount of FORTY SIX
THOUSAND FIVE HUNDRED TWENTY TWO ($46,522) DOLLARS, representing
the U.S. Dollar equivalent of 35,000 SDRs, for a total of ONE
HUNDRED SEVENTY NINE THOUSAND FOUR HUNDRED FORTY TWO ($179,442)
DOLLARS, receipt of which is hereby acknowledged, the
undersigned, on behalf of the undersigned and all and each of
their respective heirs, executors, administrators, successors,
and assigns (the undersigned, on behalf of themselves and all and
each of their respective heirs, etc., are hereinafter
collectively referred to as "Releasors"), hereby release, acquit,
forever discharge, and covenant to hold harmless UTA (also known
as Union de Transports Aeriens), La Reunion Aerienne, Airclaims,
Inc., and all and each of their respective officers, directors,
agents, employees, insurers, coinsurers, and reinsurers (UTA, La
Reunion Aerienne, Airclaims, Inc., and all and each of their
respective officers, etc. are hereinafter collectively referred
to as "Releasees") of and from any and all actions, causes of
action, suits, debts, sums of money, covenants, contracts,
controversies, agreements, promises, damages (including, but not
limited to, compensatory and punitive damages), judgments,
executions, claims, and demands whatsoever, known and unknown,
including, but not limited to, subrogated or assigned rights,
that against the Releasees the Releasors ever had, now have, or
can, shall, or may have for, upon, or by reason of any matter,
cause, or thing whatsoever relating to or arising out of the
following (hereinafter referred to as "the above described
Matter"): wrongful death of and personal injuries to Mihai
Alimanestianu, whether assertable by the heirs or personal
representative of Mihai Alimanestianu or by anyone else, and
whether characterized as wrongful death claims, survival, or
survivorship claims, or otherwise; loss or destruction of, or
damage to, the baggage or other property of Mihai Alimanestianu;
amounts paid by Mihai Alimanestianu for transportation; and any
and all other losses, damages and/or injuries relating to or
arising out of Mihai Alimanestianu having been a passenger on UTA
Flight 772, which was destroyed on September 19, 1989.

The Releasors hereby represent and warrant that the
respective relationships listed beneath the undersigneds'
signatures are true, that there are no heirs at law other than

those whose signatures appear below, and that there is no
Executor, Executrix, Administrator, Administratrix or other
Personal Representative of the Estate of Mihai Alimanestianu
other than the undersigned Executrix Ioana Alimanestianu.

The Releasors hereby represent and warrant that no claim has
been, or will be, made for worker's compensation benefits
relating to or arising out of the above described Matter and that
there are no liens for worker's compensation payments.

The Releasors, in their individual capacity, have requested
Ioana Alimanestianu, in her capacity as Executrix of the Estate
of Mihai Alimanestianu, not to bring an action against the
Releasees but rather to settle any and all claims in accordance
with the terms of this Release.

Releasor Ioana Alimanestianu represents that she has been
granted Letters Testamentary by the Surrogate's Court of New York
County to act as Executrix of the estate of Mihai Alimanestianu,
and that she has the authority to execute this release on behalf
of the estate from said court.

FOR AND IN FURTHER CONSIDERATION of the payment described
above, the Releasors agree as follows:

1.  Without limiting any of the foregoing, the payment
described above and this Release are intended to, and Releasors
represent and warrant that it will, dispose of all liability of
Releasees, and each of them, to Releasors and to any and all
third parties (whether an individual, company, government,
government agency, other government entity, or other entity)
relating to or arising out of the above described Matter.  The
Releasors agree to protect, indemnify, and hold harmless
Releasees from and against any and all actions, causes of action,
suits, damages, judgments, claims, demands, liens, and liability
of any nature whatsoever (including, but not limited to, liens or
liabilities relating to or arising out of any worker's
compensation payments), and from and against all costs and
expenses (including, but not limited to, reasonable attorneys'
fees) in defending such actions, etc., by or to any third
parties, relating to or arising out of the above described
Matter, whether anticipated or unanticipated, however caused and
whether by negligence or otherwise.

2.  Releasors hereby assign, transfer, and set over by
way of subrogation to Releasees, their successors and assigns,

- 2 -

all of Releasors' rights, title, and interests in and to any and all actions, causes of action, claims, demands and remedies that Releasors have or may have against any and all third parties who may be liable for the above described Matter and/or the destruction of the aforesaid UTA Flight 772, to the extent of the amounts paid to Releasors pursuant to this Release plus Releasees' costs and expenses (including, but not limited to, attorneys' fees) incurred in the settling of the claims herein and in obtaining any recovery against third parties.  The Releasors hereby empower the subrogated Releasees to sue, compromise, or settle in the place of the Releasors, and in the name of the latter or in the Releasees' own names in accordance with applicable law, in order for Releasees to recover for said loss against any and all such third parties.  The Releasors represent and warrant that they have not granted any release or discharge other than this Release, nor waived any right, action, cause of action, claim, demand or remedy that they have or may have against any third party relating to or arising out of the above described Matter and/or the aforesaid UTA Flight 772.

3.  The payment described above and the execution of this Release are the result of a compromise of a disputed claim and shall not at any time for any purpose be considered as an admission of liability or responsibility of the Releasees or any of them for any wrongdoing, negligence, or other culpable conduct in connection with the above described Matter and/or the aforesaid UTA Flight 772.  The Releasors acknowledge that each of the Releasees expressly continue to deny and disclaim such liability and responsibility and intend merely to avoid litigation and buy their peace.

4.  Without limiting any of the foregoing, Releasees are discharged and forever released from any and all further claims and demands whatsoever by Releasors relating to or arising out of the above described Matter and/or the aforesaid UTA Flight 772, and this Release shall apply to all unknown or unanticipated results of the above described Matter and/or the aforesaid UTA Flight 772, as well as those known and anticipated.  This Release expresses a full settlement of a disputed claim as against Releasees, and this Release is intended to avoid litigation and to be final and complete.  This Release shall not be subject to any claim of mistake of fact or law by the Releasors.

5.  Releasors agree not to publicize, communicate, or disclose to any third parties any information concerning the dispute with Releasees, the payment described above, or the terms

- 3 -

of this Release without prior written permission from the Releasees, provided that nothing herein contained shall prevent Releasors from disclosing such information as required by applicable law.

This Release shall be governed by and construed under the laws of the State of New York. This Release may not be changed orally. This Release may be made and signed in separate counterparts and when signed by all of the undersigned the counterparts shall collectively constitute one instrument.

THE RELEASORS EXPRESSLY CONFIRM THAT THEY HAVE CONSULTED WITH THEIR LAWYERS CONCERNING THIS RELEASE AND HAVE BEEN FULLY ADVISED WITH RESPECT TO THEIR RIGHTS AND OBLIGATIONS HEREUNDER. THE RELEASORS HAVE CAREFULLY READ THE FOREGOING RELEASE, FULLY UNDERSTAND IT, AND ARE SIGNING VOLUNTARILY AND OF THEIR OWN FREE WILL.

Dated: _29th May_ , 1990

_____
Ioana Alimanestianu, Spouse of Mihai
Alimanestianu, in her individual
capacity and as Executrix of the Estate
of Mihai Alimanestianu, deceased

_____
Joanna Fulga Alimanestianu, Daughter of
Mihai Alimanestianu

_____
Mihai Nicholas John Alimanestianu, Son
of Mihai Alimanestianu

_____
Irina Nineta Alimanestianu, Daughter of
Mihai Alimanestianu

_____
Alexander Anthony Alimanestianu,
Son of Mihai Alimanestianu

- 4 -

KINGDOM OF BELGIUM )
STATE OF BRUSSELS )
EMBASSY OF THE UNITED ) ss.:
STATES OF AMERICA )

On this _29th_ day of _MAY_, 1990, before me, a
duly commissioned and sworn Notary Public in and for the above
State and County, did appear Joanna Fulga Alimanestianu, known to
me as the daughter of Mihai Alimanestianu, and as the person
whose name is subscribed to the foregoing Release of All Claims,
who after being duly sworn by me, on oath stated that she has
read the Release of All Claims, it is a correct and complete
statement of the matters to which it relates, and all the
contents thereof are true, complete, and correct.

_____
Notary Public

John M. Jones
Consul of the
United States of America.

### Statement of Attorney

I am an attorney licensed to practice law in the State
of _New York_. I hereby represent and declare that I have fully
explained the foregoing Release of All Claims to Joanna Fulga
Alimanestianu, whom I represent, and she in turn acknowledged to
me an understanding of said Release and the legal effect thereof;
and the signature above her name on the Release was personally
made by her.

_____
(Signature)

CHARLES F. KRAUSE
(Type or Print Name)

140 E. 45th St.
(Street Address)

N.Y. N.Y. 10017
(State)

## RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION of the payment of the sum of
ONE HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY ($132,920)
DOLLARS, representing the U.S. Dollar equivalent of 100,000
Special Drawing Rights (SDRs) at the conversion rate of 1 SDR
equals 1.3292 U.S. Dollars, plus fees and expenses incurred in
this matter, including attorneys fees, in the amount of FORTY SIX
THOUSAND FIVE HUNDRED TWENTY TWO ($46,522) DOLLARS, representing
the U.S. Dollar equivalent of 35,000 SDRs, for a total of ONE
HUNDRED SEVENTY NINE THOUSAND FOUR HUNDRED FORTY TWO ($179,442)
DOLLARS, receipt of which is hereby acknowledged, the
undersigned, on behalf of the undersigned and all and each of
their respective heirs, executors, administrators, successors,
and assigns (the undersigned, on behalf of themselves and all and
each of their respective heirs, etc., are hereinafter
collectively referred to as "Releasors"), hereby release, acquit,
forever discharge, and covenant to hold harmless UTA (also known
as Union de Transports Aeriens), La Reunion Aerienne, Airclaims,
Inc., and all and each of their respective officers, directors,
agents, employees, insurers, coinsurers, and reinsurers (UTA, La
Reunion Aerienne, Airclaims, Inc., and all and each of their
respective officers, etc. are hereinafter collectively referred
to as "Releasees") of and from any and all actions, causes of
action, suits, debts, sums of money, covenants, contracts,
controversies, agreements, promises, damages (including, but not
limited to, compensatory and punitive damages), judgments,
executions, claims, and demands whatsoever, known and unknown,
including, but not limited to, subrogated or assigned rights,
that against the Releasees the Releasors ever had, now have, or
can, shall, or may have for, upon, or by reason of any matter,
cause, or thing whatsoever relating to or arising out of the
following (hereinafter referred to as "the above described
Matter"):  wrongful death of and personal injuries to Mihai
Alimanestianu, whether assertable by the heirs or personal
representative of Mihai Alimanestianu or by anyone else, and
whether characterized as wrongful death claims, survival, or
survivorship claims, or otherwise; loss or destruction of, or
damage to, the baggage or other property of Mihai Alimanestianu;
amounts paid by Mihai Alimanestianu for transportation; and any
and all other losses, damages and/or injuries relating to or
arising out of Mihai Alimanestianu having been a passenger on UTA
Flight 772, which was destroyed on September 19, 1989.

The Releasors hereby represent and warrant that the
respective relationships listed beneath the undersigneds'
signatures are true, that there are no heirs at law other than

those whose signatures appear below, and that there is no
Executor, Executrix, Administrator, Administratrix or other
Personal Representative of the Estate of Mihai Alimanestianu
other than the undersigned Executrix Ioana Alimanestianu.

The Releasors hereby represent and warrant that no claim has
been, or will be, made for worker's compensation benefits
relating to or arising out of the above described Matter and that
there are no liens for worker's compensation payments.

The Releasors, in their individual capacity, have requested
Ioana Alimanestianu, in her capacity as Executrix of the Estate
of Mihai Alimanestianu, not to bring an action against the
Releasees but rather to settle any and all claims in accordance
with the terms of this Release.

Releasor Ioana Alimanestianu represents that she has been
granted Letters Testamentary by the Surrogate's Court of New York
County to act as Executrix of the estate of Mihai Alimanestianu,
and that she has the authority to execute this release on behalf
of the estate from said court.

FOR AND IN FURTHER CONSIDERATION of the payment described
above, the Releasors agree as follows:

1.  Without limiting any of the foregoing, the payment
described above and this Release are intended to, and Releasors
represent and warrant that it will, dispose of all liability of
Releasees, and each of them, to Releasors and to any and all
third parties (whether an individual, company, government,
government agency, other government entity, or other entity)
relating to or arising out of the above described Matter.  The
Releasors agree to protect, indemnify, and hold harmless
Releasees from and against any and all actions, causes of action,
suits, damages, judgments, claims, demands, liens, and liability
of any nature whatsoever (including, but not limited to, liens or
liabilities relating to or arising out of any worker's
compensation payments), and from and against all costs and
expenses (including, but not limited to, reasonable attorneys'
fees) in defending such actions, etc., by or to any third
parties, relating to or arising out of the above described
Matter, whether anticipated or unanticipated, however caused and
whether by negligence or otherwise.

2.  Releasors hereby assign, transfer, and set over by
way of subrogation to Releasees, their successors and assigns,

- 2 -

all of Releasors' rights, title, and interests in and to any and all actions, causes of action, claims, demands and remedies that Releasors have or may have against any and all third parties who may be liable for the above described Matter and/or the destruction of the aforesaid UTA Flight 772, to the extent of the amounts paid to Releasors pursuant to this Release plus Releasees' costs and expenses (including, but not limited to, attorneys' fees) incurred in the settling of the claims herein and in obtaining any recovery against third parties. The Releasors hereby empower the subrogated Releasees to sue, compromise, or settle in the place of the Releasors, and in the name of the latter or in the Releasees' own names in accordance with applicable law, in order for Releasees to recover for said loss against any and all such third parties. The Releasors represent and warrant that they have not granted any release or discharge other than this Release, nor waived any right, action, cause of action, claim, demand or remedy that they have or may have against any third party relating to or arising out of the above described Matter and/or the aforesaid UTA Flight 772.

3. The payment described above and the execution of this Release are the result of a compromise of a disputed claim and shall not at any time for any purpose be considered as an admission of liability or responsibility of the Releasees or any of them for any wrongdoing, negligence, or other culpable conduct in connection with the above described Matter and/or the aforesaid UTA Flight 772. The Releasors acknowledge that each of the Releasees expressly continue to deny and disclaim such liability and responsibility and intend merely to avoid litigation and buy their peace.

4. Without limiting any of the foregoing, Releasees are discharged and forever released from any and all further claims and demands whatsoever by Releasors relating to or arising out of the above described Matter and/or the aforesaid UTA Flight 772, and this Release shall apply to all unknown or unanticipated results of the above described Matter and/or the aforesaid UTA Flight 772, as well as those known and anticipated. This Release expresses a full settlement of a disputed claim as against Releasees, and this Release is intended to avoid litigation and to be final and complete. This Release shall not be subject to any claim of mistake of fact or law by the Releasors.

5. Releasors agree not to publicize, communicate, or disclose to any third parties any information concerning the dispute with Releasees, the payment described above, or the terms

- 3 -

of this Release without prior written permission from the Releasees, provided that nothing herein contained shall prevent Releasors from disclosing such information as required by applicable law.

This Release shall be governed by and construed under the laws of the State of New York. This Release may not be changed orally. This Release may be made and signed in separate counterparts and when signed by all of the undersigned the counterparts shall collectively constitute one instrument.

THE RELEASORS EXPRESSLY CONFIRM THAT THEY HAVE CONSULTED WITH THEIR LAWYERS CONCERNING THIS RELEASE AND HAVE BEEN FULLY ADVISED WITH RESPECT TO THEIR RIGHTS AND OBLIGATIONS HEREUNDER. THE RELEASORS HAVE CAREFULLY READ THE FOREGOING RELEASE, FULLY UNDERSTAND IT, AND ARE SIGNING VOLUNTARILY AND OF THEIR OWN FREE WILL.

Dated: ____5/28/90____, 1990


_____
Ioana Alimanestianu, Spouse of Mihai Alimanestianu, in her individual capacity and as Executrix of the Estate of Mihai Alimanestianu, deceased


_____
Joanna Fulga Alimanestianu, Daughter of Mihai Alimanestianu

_____
Mihai Nicholas John Alimanestianu, Son of Mihai Alimanestianu


_____
Irina Nineta Alimanestianu, Daughter of Mihai Alimanestianu


_____
Alexander Anthony Alimanestianu, Son of Mihai Alimanestianu

- 4 -

STATE OF *New York*)
)  ss.:
COUNTY OF *Suffolk*)

       On this __25__ day of __May__, 1990, before me, a
duly commissioned and sworn Notary Public in and for the above
State and County, did appear Mihai Nicholas John Alimanestianu,
known to me as the son of Mihai Alimanestianu, and as the person
whose name is subscribed to the foregoing Release of All Claims,
who after being duly sworn by me, on oath stated that he has read
the Release of All Claims, it is a correct and complete statement
of the matters to which it relates, and all the contents thereof
are true, complete, and correct.

DIANE M. CARPENTER
Notary Public, State of New York
No. 4740335
Qualified in Suffolk County
Commission Expires March 18, 19__

                                        _Diane M. Carpenter_
                                           Notary Public

### Statement of Attorney

       I am an attorney licensed to practice law in the State
of *New York*.  I hereby represent and declare that I have fully
explained the foregoing Release of All Claims to Mihai Nicholas
John Alimanestianu, whom I represent, and he in turn acknowledged
to me an understanding of said Release and the legal effect
thereof; and the signature above his name on the Release was
personally made by him.

                                    _Signature_

                         _CHARLES F. KRAUSE_
                         (Type or Print Name)

                         _140 E. 45th ST._
                         (Street Address)

                         _N.Y. N.Y. 10017_
                         (State)

## RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION of the payment of the sum of ONE HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY ($132,920) DOLLARS, representing the U.S. Dollar equivalent of 100,000 Special Drawing Rights (SDRs) at the conversion rate of 1 SDR equals 1.3292 U.S. Dollars, plus fees and expenses incurred in this matter, including attorneys fees, in the amount of FORTY SIX THOUSAND FIVE HUNDRED TWENTY TWO ($46,522) DOLLARS, representing the U.S. Dollar equivalent of 35,000 SDRs, for a total of ONE HUNDRED SEVENTY NINE THOUSAND FOUR HUNDRED FORTY TWO ($179,442) DOLLARS, receipt of which is hereby acknowledged, the undersigned, on behalf of the undersigned and all and each of their respective heirs, executors, administrators, successors, and assigns (the undersigned, on behalf of themselves and all and each of their respective heirs, etc., are hereinafter collectively referred to as "Releasors"), hereby release, acquit, forever discharge, and covenant to hold harmless UTA (also known as Union de Transports Aeriens), La Reunion Aerienne, Airclaims, Inc., and all and each of their respective officers, directors, agents, employees, insurers, coinsurers, and reinsurers (UTA, La Reunion Aerienne, Airclaims, Inc., and all and each of their respective officers, etc. are hereinafter collectively referred to as "Releasees") of and from any and all actions, causes of action, suits, debts, sums of money, covenants, contracts, controversies, agreements, promises, damages (including, but not limited to, compensatory and punitive damages), judgments, executions, claims, and demands whatsoever, known and unknown, including, but not limited to, subrogated or assigned rights, that against the Releasees the Releasors ever had, now have, or can, shall, or may have for, upon, or by reason of any matter, cause, or thing whatsoever relating to or arising out of the following (hereinafter referred to as "the above described Matter"):  wrongful death of and personal injuries to Mihai Alimanestianu, whether assertable by the heirs or personal representative of Mihai Alimanestianu or by anyone else, and whether characterized as wrongful death claims, survival, or survivorship claims, or otherwise; loss or destruction of, or damage to, the baggage or other property of Mihai Alimanestianu; amounts paid by Mihai Alimanestianu for transportation; and any and all other losses, damages and/or injuries relating to or arising out of Mihai Alimanestianu having been a passenger on UTA Flight 772, which was destroyed on September 19, 1989.

The Releasors hereby represent and warrant that the respective relationships listed beneath the undersigneds' signatures are true, that there are no heirs at law other than

those whose signatures appear below, and that there is no
Executor, Executrix, Administrator, Administratrix or other
Personal Representative of the Estate of Mihai Alimanestianu
other than the undersigned Executrix Ioana Alimanestianu.

The Releasors hereby represent and warrant that no claim has
been, or will be, made for worker's compensation benefits
relating to or arising out of the above described Matter and that
there are no liens for worker's compensation payments.

The Releasors, in their individual capacity, have requested
Ioana Alimanestianu, in her capacity as Executrix of the Estate
of Mihai Alimanestianu, not to bring an action against the
Releasees but rather to settle any and all claims in accordance
with the terms of this Release.

Releasor Ioana Alimanestianu represents that she has been
granted Letters Testamentary by the Surrogate's Court of New York
County to act as Executrix of the estate of Mihai Alimanestianu,
and that she has the authority to execute this release on behalf
of the estate from said court.

FOR AND IN FURTHER CONSIDERATION of the payment described
above, the Releasors agree as follows:

1.  Without limiting any of the foregoing, the payment
described above and this Release are intended to, and Releasors
represent and warrant that it will, dispose of all liability of
Releasees, and each of them, to Releasors and to any and all
third parties (whether an individual, company, government,
government agency, other government entity, or other entity)
relating to or arising out of the above described Matter.  The
Releasors agree to protect, indemnify, and hold harmless
Releasees from and against any and all actions, causes of action,
suits, damages, judgments, claims, demands, liens, and liability
of any nature whatsoever (including, but not limited to, liens or
liabilities relating to or arising out of any worker's
compensation payments), and from and against all costs and
expenses (including, but not limited to, reasonable attorneys'
fees) in defending such actions, etc., by or to any third
parties, relating to or arising out of the above described
Matter, whether anticipated or unanticipated, however caused and
whether by negligence or otherwise.

2.  Releasors hereby assign, transfer, and set over by
way of subrogation to Releasees, their successors and assigns,

- 2 -

all of Releasors' rights, title, and interests in and to any and all actions, causes of action, claims, demands and remedies that Releasors have or may have against any and all third parties who may be liable for the above described Matter and/or the destruction of the aforesaid UTA Flight 772, to the extent of the amounts paid to Releasors pursuant to this Release plus Releasees' costs and expenses (including, but not limited to, attorneys' fees) incurred in the settling of the claims herein and in obtaining any recovery against third parties. The Releasors hereby empower the subrogated Releasees to sue, compromise, or settle in the place of the Releasors, and in the name of the latter or in the Releasees' own names in accordance with applicable law, in order for Releasees to recover for said loss against any and all such third parties. The Releasors represent and warrant that they have not granted any release or discharge other than this Release, nor waived any right, action, cause of action, claim, demand or remedy that they have or may have against any third party relating to or arising out of the above described Matter and/or the aforesaid UTA Flight 772.

3. The payment described above and the execution of this Release are the result of a compromise of a disputed claim and shall not at any time for any purpose be considered as an admission of liability or responsibility of the Releasees or any of them for any wrongdoing, negligence, or other culpable conduct in connection with the above described Matter and/or the aforesaid UTA Flight 772. The Releasors acknowledge that each of the Releasees expressly continue to deny and disclaim such liability and responsibility and intend merely to avoid litigation and buy their peace.

4. Without limiting any of the foregoing, Releasees are discharged and forever released from any and all further claims and demands whatsoever by Releasors relating to or arising out of the above described Matter and/or the aforesaid UTA Flight 772, and this Release shall apply to all unknown or unanticipated results of the above described Matter and/or the aforesaid UTA Flight 772, as well as those known and anticipated. This Release expresses a full settlement of a disputed claim as against Releasees, and this Release is intended to avoid litigation and to be final and complete. This Release shall not be subject to any claim of mistake of fact or law by the Releasors.

5. Releasors agree not to publicize, communicate, or disclose to any third parties any information concerning the dispute with Releasees, the payment described above, or the terms

- 3 -

of this Release without prior written permission from the Releasees, provided that nothing herein contained shall prevent Releasors from disclosing such information as required by applicable law.

This Release shall be governed by and construed under the laws of the State of New York.  This Release may not be changed orally.  This Release may be made and signed in separate counterparts and when signed by all of the undersigned the counterparts shall collectively constitute one instrument.

THE RELEASORS EXPRESSLY CONFIRM THAT THEY HAVE CONSULTED WITH THEIR LAWYERS CONCERNING THIS RELEASE AND HAVE BEEN FULLY ADVISED WITH RESPECT TO THEIR RIGHTS AND OBLIGATIONS HEREUNDER. THE RELEASORS HAVE CAREFULLY READ THE FOREGOING RELEASE, FULLY UNDERSTAND IT, AND ARE SIGNING VOLUNTARILY AND OF THEIR OWN FREE WILL.

Dated:  __5/25__ , 1990

_____
Ioana Alimanestianu, Spouse of Mihai Alimanestianu, in her individual capacity and as Executrix of the Estate of Mihai Alimanestianu, deceased


_____
Joanna Fulga Alimanestianu, Daughter of Mihai Alimanestianu


_____
Mihai Nicholas John Alimanestianu, Son of Mihai Alimanestianu


_____
Irina Nineta Alimanestianu, Daughter of Mihai Alimanestianu


_____
Alexander Anthony Alimanestianu, Son of Mihai Alimanestianu

- 4 -

STATE OF California )
                    )  ss.:
COUNTY OF Los Angeles)

      On this 25th day of May , 1990, before me, a duly commissioned and sworn Notary Public in and for the above State and County, did appear Irina Nineta Alimanestianu, known to me as the daughter of Mihai Alimanestianu, and as the person whose name is subscribed to the foregoing Release of All Claims, who after being duly sworn by me, on oath stated that she has read the Release of All Claims, it is a correct and complete statement of the matters to which it relates, and all the contents thereof are true, complete, and correct.



OFFICIAL SEAL
LINDA M. GALDO
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. JAN. 12, 1993

_____
Notary Public

### Statement of Attorney

      I am an attorney licensed to practice law in the State of New York. I hereby represent and declare that I have fully explained the foregoing Release of All Claims to Irina Nineta Alimanestianu, whom I represent, and she in turn acknowledged to me an understanding of said Release and the legal effect thereof; and the signature above her name on the Release was personally made by her.

_____
Signature

_C_H_A_R_L_E_S__F_._K_R_A_U_S_E_
(Type or Print Name)

_1_4_0__E_._4_5_t_h__S_t_.
(Street Address)

_N_.Y_._N_.Y_.___1_0_0_1_7
(State)

## RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION of the payment of the sum of
ONE HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY ($132,920)
DOLLARS, representing the U.S. Dollar equivalent of 100,000
Special Drawing Rights (SDRs) at the conversion rate of 1 SDR
equals 1.3292 U.S. Dollars, plus fees and expenses incurred in
this matter, including attorneys fees, in the amount of FORTY SIX
THOUSAND FIVE HUNDRED TWENTY TWO ($46,522) DOLLARS, representing
the U.S. Dollar equivalent of 35,000 SDRs, for a total of ONE
HUNDRED SEVENTY NINE THOUSAND FOUR HUNDRED FORTY TWO ($179,442)
DOLLARS, receipt of which is hereby acknowledged, the
undersigned, on behalf of the undersigned and all and each of
their respective heirs, executors, administrators, successors,
and assigns (the undersigned, on behalf of themselves and all and
each of their respective heirs, etc., are hereinafter
collectively referred to as "Releasors"), hereby release, acquit,
forever discharge, and covenant to hold harmless UTA (also known
as Union de Transports Aeriens), La Reunion Aerienne, Airclaims,
Inc., and all and each of their respective officers, directors,
agents, employees, insurers, coinsurers, and reinsurers (UTA, La
Reunion Aerienne, Airclaims, Inc., and all and each of their
respective officers, etc. are hereinafter collectively referred
to as "Releasees") of and from any and all actions, causes of
action, suits, debts, sums of money, covenants, contracts,
controversies, agreements, promises, damages (including, but not
limited to, compensatory and punitive damages), judgments,
executions, claims, and demands whatsoever, known and unknown,
including, but not limited to, subrogated or assigned rights,
that against the Releasees the Releasors ever had, now have, or
can, shall, or may have for, upon, or by reason of any matter,
cause, or thing whatsoever relating to or arising out of the
following (hereinafter referred to as "the above described
Matter"):  wrongful death of and personal injuries to Mihai
Alimanestianu, whether assertable by the heirs or personal
representative of Mihai Alimanestianu or by anyone else, and
whether characterized as wrongful death claims, survival, or
survivorship claims, or otherwise; loss or destruction of, or
damage to, the baggage or other property of Mihai Alimanestianu;
amounts paid by Mihai Alimanestianu for transportation; and any
and all other losses, damages and/or injuries relating to or
arising out of Mihai Alimanestianu having been a passenger on UTA
Flight 772, which was destroyed on September 19, 1989.

The Releasors hereby represent and warrant that the
respective relationships listed beneath the undersigneds'
signatures are true, that there are no heirs at law other than

those whose signatures appear below, and that there is no Executor, Executrix, Administrator, Administratrix or other Personal Representative of the Estate of Mihai Alimanestianu other than the undersigned Executrix Ioana Alimanestianu.

The Releasors hereby represent and warrant that no claim has been, or will be, made for worker's compensation benefits relating to or arising out of the above described Matter and that there are no liens for worker's compensation payments.

The Releasors, in their individual capacity, have requested Ioana Alimanestianu, in her capacity as Executrix of the Estate of Mihai Alimanestianu, not to bring an action against the Releasees but rather to settle any and all claims in accordance with the terms of this Release.

Releasor Ioana Alimanestianu represents that she has been granted Letters Testamentary by the Surrogate's Court of New York County to act as Executrix of the estate of Mihai Alimanestianu, and that she has the authority to execute this release on behalf of the estate from said court.

FOR AND IN FURTHER CONSIDERATION of the payment described above, the Releasors agree as follows:

1.  Without limiting any of the foregoing, the payment described above and this Release are intended to, and Releasors represent and warrant that it will, dispose of all liability of Releasees, and each of them, to Releasors and to any and all third parties (whether an individual, company, government, government agency, other government entity, or other entity) relating to or arising out of the above described Matter.  The Releasors agree to protect, indemnify, and hold harmless Releasees from and against any and all actions, causes of action, suits, damages, judgments, claims, demands, liens, and liability of any nature whatsoever (including, but not limited to, liens or liabilities relating to or arising out of any worker's compensation payments), and from and against all costs and expenses (including, but not limited to, reasonable attorneys' fees) in defending such actions, etc., by or to any third parties, relating to or arising out of the above described Matter, whether anticipated or unanticipated, however caused and whether by negligence or otherwise.

2.  Releasors hereby assign, transfer, and set over by way of subrogation to Releasees, their successors and assigns,

- 2 -

all of Releasors' rights, title, and interests in and to any and all actions, causes of action, claims, demands and remedies that Releasors have or may have against any and all third parties who may be liable for the above described Matter and/or the destruction of the aforesaid UTA Flight 772, to the extent of the amounts paid to Releasors pursuant to this Release plus Releasees' costs and expenses (including, but not limited to, attorneys' fees) incurred in the settling of the claims herein and in obtaining any recovery against third parties.  The Releasors hereby empower the subrogated Releasees to sue, compromise, or settle in the place of the Releasors, and in the name of the latter or in the Releasees' own names in accordance with applicable law, in order for Releasees to recover for said loss against any and all such third parties.  The Releasors represent and warrant that they have not granted any release or discharge other than this Release, nor waived any right, action, cause of action, claim, demand or remedy that they have or may have against any third party relating to or arising out of the above described Matter and/or the aforesaid UTA Flight 772.

3.    The payment described above and the execution of this Release are the result of a compromise of a disputed claim and shall not at any time for any purpose be considered as an admission of liability or responsibility of the Releasees or any of them for any wrongdoing, negligence, or other culpable conduct in connection with the above described Matter and/or the aforesaid UTA Flight 772.  The Releasors acknowledge that each of the Releasees expressly continue to deny and disclaim such liability and responsibility and intend merely to avoid litigation and buy their peace.

4.    Without limiting any of the foregoing, Releasees are discharged and forever released from any and all further claims and demands whatsoever by Releasors relating to or arising out of the above described Matter and/or the aforesaid UTA Flight 772, and this Release shall apply to all unknown or unanticipated results of the above described Matter and/or the aforesaid UTA Flight 772, as well as those known and anticipated.  This Release expresses a full settlement of a disputed claim as against Releasees, and this Release is intended to avoid litigation and to be final and complete.  This Release shall not be subject to any claim of mistake of fact or law by the Releasors.

5.    Releasors agree not to publicize, communicate, or disclose to any third parties any information concerning the dispute with Releasees, the payment described above, or the terms

- 3 -

of this Release without prior written permission from the
Releasees, provided that nothing herein contained shall prevent
Releasors from disclosing such information as required by
applicable law.

   This Release shall be governed by and construed under the
laws of the State of New York.  This Release may not be changed
orally.  This Release may be made and signed in separate
counterparts and when signed by all of the undersigned the
counterparts shall collectively constitute one instrument.

   THE RELEASORS EXPRESSLY CONFIRM THAT THEY HAVE CONSULTED
WITH THEIR LAWYERS CONCERNING THIS RELEASE AND HAVE BEEN FULLY
ADVISED WITH RESPECT TO THEIR RIGHTS AND OBLIGATIONS HEREUNDER.
THE RELEASORS HAVE CAREFULLY READ THE FOREGOING RELEASE, FULLY
UNDERSTAND IT, AND ARE SIGNING VOLUNTARILY AND OF THEIR OWN FREE
WILL.

Dated: _May 25_____, 1990

                    _____
                    Ioana Alimanestianu, Spouse of Mihai
                    Alimanestianu, in her individual
                    capacity and as Executrix of the Estate
                    of Mihai Alimanestianu, deceased


                    _____
                    Joanna Fulga Alimanestianu, Daughter of
                    Mihai Alimanestianu


                    _____
                    Mihai Nicholas John Alimanestianu, Son
                    of Mihai Alimanestianu


                    _____
                    Irina Nineta Alimanestianu, Daughter of
                    Mihai Alimanestianu

                    _A. Alimanestianu_____
                    Alexander Anthony Alimanestianu,
                    Son of Mihai Alimanestianu

                    - 4 -

STATE OF *New York* )
                   ) ss.:
COUNTY OF *Suffolk* )

        On this 29th day of May , 1990, before me, a duly commissioned and sworn Notary Public in and for the above State and County, did appear Alexander Anthony Alimanestianu, known to me as the son of Mihai Alimanestianu, and as the person whose name is subscribed to the foregoing Release of All Claims, who after being duly sworn by me, on oath stated that he has read the Release of All Claims, it is a correct and complete statement of the matters to which it relates, and all the contents thereof are true, complete, and correct.

               SUSAN J. WEILER
         Notary Public, State of New York
                No. 31-4945519
          Qualified in New York County
       Commission Expires December 27, 1990

                                 Notary Public

### Statement of Attorney

        I am an attorney licensed to practice law in the State of *New York*. I hereby represent and declare that I have fully explained the foregoing Release of All Claims to Alexander Anthony Alimanestianu, whom I represent, and he in turn acknowledged to me an understanding of said Release and the legal effect thereof; and the signature above his name on the Release was personally made by him.

                                Signature

                     CHARLES F. KRAUSE
                    (Type or Print Name)

                     140 E. 45th St.
                    (Street Address)

                     N.Y. N.Y. 10017
                         (State)