UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

| | |
|---|---|
| LA RÉUNION AÉRIENNE ) | |
| ) | Civil Action No. 05-01932 (HHK) |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| SOCIALIST PEOPLE'S LIBYAN ) | |
| ARAB JAMAHIRIYA, LIBYAN EXTERNAL ) | |
| SECURITY ORGANIZATION, MUAMMAR ) | |
| QADHAFI, ABDALLAH SENOUSSI, AHMED ) | |
| ABDALLAH ELAZRAGH, IBRAHIM NAELI, ) | |
| ARBAS MUSBAH, ISSA ABDELSALAM ) | |
| SHIBANI AND ABDELSALAM HAMMOUDA ) | |
| EL AGELI ) | |
| ) | |
| Defendants. ) | |

———————————————————————

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF CROSS-MOTION TO
CERTIFY DEFENDANTS' APPEAL AS FRIVOLOUS**

Libya's opposition to the motion to certify its appeal as frivolous proceeds by the tactic of setting up a straw-man and then attacking that. What is at issue here is not the six points which Libya claims to be putting before the Court of Appeals to review. *None* of those issues is proper for an interlocutory appeal. Indeed, three of those issues do not concern either Libya or LESO, who are the *only* parties who took this appeal. *See* Notice of Appeal, appended hereto as Exhibit "A."

The only issue on which Libya and LESO lost, and which could be the subject of an interlocutory appeal, is whether either of them (hereinafter, collectively "Libya") is entitled to sovereign immunity despite the FSIA exception applicable here. That issue has repeatedly been decided against Libya, and would clearly qualify as frivolous. In order to make it appear as if it

were not trying to relitigate that issue for the umpteenth time, Libya attempts to couch its "issue" in a novel way.

Following are Plaintiff's responses with regard to each of the six issues Libya claims to be the subject of its interlocutory appeal. As shown, each such "issue" either is not or cannot be on appeal at all, or cannot properly be the subject of an interlocutory appeal:[1]

1.    Whether the Court has erred in holding that it has subject-matter jurisdiction under the 1996 Terrorism Amendment to consider third party claims against Libya.

As noted above and in Plaintiff's opening papers, the only issue which could properly be the subject of an interlocutory appeal, whether either Libya or LESO is entitled to sovereign immunity against claims arising out of their terrorist acts, has so frequently been resolved against them as to no longer be open to question. Libya, argues, however, that that is not one of its issues on appeal. Rather, it contends that its appeal concerns only other questions, including whether this Court may consider third-party claims against this "sovereign" entity.

Preliminarily, it should be noted that while Libya prefers to label this issue as one of subject matter jurisdiction, it actually is a question of standing. *See Vermont Agency of Natural Resources*, v. *United States ex. rel. Stevens*, 529 U.S. 765, 773-74 (2000) (rights of assignees and subrogees is an issue of standing); *APCC Services, Inc. v. Sprint Communications Co.*, 418 F.3d 1238, 1243 (D.C. Cir. 2005) (assignment is an issue of standing).

It is well settled that standing is not an issue that falls within the collateral order doctrine exception to the finality rule and, thus, standing is not a proper subject for an interlocutory appeal. *See, e.g., Summit Medical Assocs. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999), *cert.*

---

[1]    Libya's brief begins by complaining that Plaintiff improperly labeled its ECF filing. This contention, besides having no bearing on the merits of the motion, fails to take note of the fact that the ECF system does not allow a filer to create a caption for the document being filed, but requires the filer to select a caption from the list available on the system. Thus, Plaintiff selected the caption that most closely describes the within motion.

*denied*, 529 U.S. 1012 (2000) ("although a district court's standing determination conclusively resolves a disputed question and settles an important issue separate from the merits of the case, courts have recognized that the issue of standing is not effectively unreviewable on appeal from a final judgment and, thus, fails the last prong of the collateral order doctrine"); [2] *Triad Associates, Inc. v. Robinson*, 10 F.3d 492, 496 n.2 (7th Cir. 1993) (resolution of standing question not part of the resolution of immunity question such as to render the denial of a motion to dismiss on standing grounds immediately appealable); *Shanks v. City of Dallas*, 752 F.2d 1092, 1098 n.9 (5th Cir. 1985) (same); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 474-75 (2nd Cir. 1974) ("The Supreme Court specifically urged that the [collateral order doctrine] exception does not apply 'even from fully consummated decisions, where they are but steps towards final judgment in which they will merge.' There can be no doubt that the District Court's recognition of standing . . . fits squarely into the definition of an act which is merely a step … toward final judgment in which (it) will merge'" (citation omitted, second ellipsis in original)).

Moreover, even accepting Libya's characterization of the third-party claim issue as one of subject matter jurisdiction, which it is not, it nonetheless does not fall within the collateral order exception. In *Will v. Hallock*, 546 U.S. 345, 126 S. Ct. 952 (2006), the Supreme Court was faced with an appeal of a district court order that rejected the judgment bar of the Federal Tort Claims Act as a defense. In vacating the Court of Appeals affirmance on the basis that the Court of Appeals lacked appellate jurisdiction, the Supreme Court made clear that in order to apply the collateral order doctrine it is not enough that the appealing party seek to vindicate a right not to stand trial, because almost every pretrial order that is outcome determinative could be deemed

---

[2]     Notably, in *Summit*, the Court of Appeals held that it had jurisdiction to consider the question of sovereign immunity, but it nevertheless declined to review the district court's determination on standing.

effectively unreviewable in that sense, 126 S. Ct. at 958,[3] but that there must also be some "judgment about the value of the interests that would be lost through vigorous application of a final judgment requirement." *Id.* at 959. As examples of such important interests, the Supreme Court cited appeals from a denial of presidential immunity (affecting the separation of powers), qualified immunity (threatening disruption of governmental functions), Eleventh Amendment immunity (affecting the need to vindicate state's dignatory interests), and double jeopardy (affecting the need to control government's enormous prosecutorial power):

> In each case, some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignatory interests, and mitigating the government's advantage over the individual. That is, it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is "effectively" unreviewable if review is to be left until later.

126 S. Ct. at 959 (citation omitted). *See also Johnson v. Jones*, 515 U.S. 304, 315 (1995) (right not to stand trial, without more, insufficient to invoke collateral order doctrine).[4]

---

[3]     The Court mentioned, as examples of claims that could result in the avoidance of a trial but nevertheless do not fall within the doctrine, claims that the district court lacks personal jurisdiction, that the statute of limitations has run, that a movant has been denied his Sixth Amendment right to a speedy trial, that the action is barred on claim preclusion grounds, that no material fact is in dispute and the movant is entitled to summary judgment, and that the complaint fails to state a claim. "Such motions can be made in virtually every case." 126 S. Ct. at 958, *citing Digital Equipment Corp. v. Desktop Direct, Inc.* 511 U.S. 863, 873 (1994). The denial of a motion on any of these grounds will, of course, subject the movant to a trial, but that does not suffice to render such orders immediately appealable.

[4]     Libya cites *Marra v. Papandreau*, 216 F.3d 1119 (D.C. Cir. 2000) and *In re Papandreau* 139 F.3d 247 (D.C. Cir. 1988), for the purported proposition that the Court of Appeals may consider "other jurisdictional grounds" which can be dispositive of an entire case. Both cited cases dealt with the question whether the District Court had jurisdiction to do what it did. 216 F.3d at 1122; 139 F.3d at 252. Neither decision concerned itself in any way with appellate jurisdiction, which requires an entirely different analysis, particularly because the right to take an interlocutory appeal is very limited.

Libya's issue, even if viewed as one of subject matter jurisdiction rather than of standing, cannot meet this test.  Libya and LESO do not seek to vindicate whether they are entitled to sovereign immunity as such, but only whether LRA can assert the same claims that its assignors and subrogors (the *Pugh* Plaintiffs) unquestionably can assert.  An appeal on that issue does not involve the "avoidance of a trial that would imperil a substantial public interest."  This issue is not immediately appealable, and it remains the fact that the only issue that could be -- whether Libya or LESO can invoke sovereign immunity -- is certifiably frivolous.

2.      Whether the Court has erred in holding that subrogation may also create subject matter jurisdiction where the Supreme Court has held that the sole source of subject-matter jurisdiction over a foreign state is the FSIA.

As a preliminary matter, Libya misapprehends the Court's holding.  The Court held that an assignee or subrogee does not bring claims for harms to himself, but only steps into the shoes of his or her assignor or subrogor.  As such, neither assignment nor subrogation creates subject matter jurisdiction.  Subject matter jurisdiction must pre-exist in the form of some right of the assignor or subrogor against Libya, and that right then passes over to the assignee or subrogee by virtue of well-understood principles of assignment or subrogation.

Going beyond that, this issue, to the extent it differs in any discernable way from Libya's first issue, does not present grounds for an interlocutory appeal for the very same reasons as enunciated above with regard to that first issue.

3.      Whether the Court erred when it deferred the decision as to whether it may consider the issue of punitive damages against Libya based on state choice of law when the issue is preempted by an exclusive and specific provision of the FSIA regarding punitive damages.

This issue is a total fabrication.  The Court did not defer its decision against Libya. Rather, Plaintiff conceded, and the Court ruled, that punitive damages are not available against

Libya (or LESO).  Simply stated, this is not an issue for *any* appeal by either Libya or LESO, much less an interlocutory appeal.[5]

4.       Whether the Court erred in holding that plaintiff's foreign nationality was not a bar to subject-matter jurisdiction under the FSIA.

This issue, too, is plainly outside the collateral order doctrine, for the same reasons as Libya's first issue.  Libya does not seek to vindicate an important right, such as whether it is entitled to immunity, but, rather, whether the Plaintiff may assert its claim.  At best, that is the same type of issue as found to be outside the doctrine in *Will v. Hallock*, 126 S. Ct. at 958.

Moreover, this purported issue is plainly frivolous.  As this Court held, the statute's plain language requires only that *either* the victim or the claimant be a U.S. national at the time of the terrorist act.  That condition is unquestionably met here.  Indeed, there is no other way to read the statutory language.  The Court is plainly well within its right to declare an appeal on that issue to be a waste of the Court Appeals' resources, if not a waste of good paper and ink.

5.       Whether the Court erred when it ordered that undersigned counsel accept service on behalf of the individual defendants in their personal capacity.

This issue is also bogus.  Simply stated, this issue, if any, obviously could only be appealed by the individual Defendants.  But they did not take an appeal.  The Notice of Appeal was filed *only* by Libya and LESO.  The state Defendants have neither the power nor the right to raise this issue on any appeal, much less an interlocutory appeal.[6]

---

[5]       Moreover, simply deferring an issue does not render it immediately appealable within the meaning of the collateral order doctrine.  *American Hawaii Cruises v. Skinner*, 893 F.2d 1400, 1403 (D.C. Cir. 1990)

[6]       Moreover, the claim that the service determination is a final determination affecting a fundamental right is plainly wrong.  Even immunity from service of process, not merely ineffective service, does not fall within the collateral order doctrine.  *See State of Alaska v. United States*, 64 F.3d 1352, 1355 (9th Cir. 1995)

6.    Whether the Court erred in holding that it could exercise personal jurisdiction over the individual defendants for claims against them in their personal capacities despite counsel's assertion that he does not represent the individual defendants in their personal capacity (issue of defective service and violation of Due Process protections of the Constitution).

Once again, this is only an issue, if at all, for the individual Defendants, who have not noticed an appeal. Moreover, even if it were an issue on appeal, which is not the case, personal jurisdiction is not a proper issue for an interlocutory appeal. *Digital Equipment Corp. v. Desktop Direct, Inc.* 511 U.S. 863, 873 (1994); *Will v. Hallock*, 546 U.S. 345. 126 S. Ct. 952, 958 (2006).

* * * * *

In summary, three of Libya's six purported issues are not and cannot be on appeal. As to Libya's three remaining issues, to the extent they are not precluded on the face of the applicable statutes, none presents an issue falling within the collateral order doctrine or otherwise presenting grounds for an interlocutory appeal.

Libya's appeal should be certified as plainly frivolous. The only issue that could conceivably be deemed to fall within the collateral order doctrine has so often been determined against Libya that even it is constrained to concede it has no basis for an appeal on that issue.


Date:  May 8, 2007                              Respectfully submitted,


                                                 /S/ Christopher B. Kende___
                                                Christopher B. Kende, Esquire (D.C. 416487)
                                                COZEN O'CONNOR
                                                45 Broadway
                                                New York, NY 10006
                                                (212) 509-9400
                                                (212) 509-9492 (facsimile)
                                                *Attorneys for Plaintiff*