**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **LA RÉUNION AÉRIENNE,** |
| **Plaintiff**, |
| v. |
| **SOCIALIST PEOPLE'S LIBYAN ARAB JARMAHIRIYA, et al.,** |
| **Defendants.** |

Civil Action 05-1932 (RCL)

**MEMORANDUM OPINION**

Plaintiff La Réunion Aérienne, a French partnership representing the interests of a group of insurance companies, brings this action against six high-ranking Libyan government officials in their personal capacities (collectively, the "individual defendants").[1] Plaintiff seeks to recover payments it made to compensate victims' estates and families for losses arising from the explosion of Union des Transports Aeriens Flight 722 on September 19, 1989. Before the Court is the United States' Supplemental Statement of Interest [Dkt. # 58], which, in essence, asks the Court to reconsider the ruling that plaintiff's claims could proceed against the individual defendants in their personal capacities. Upon consideration of the United States' Supplemental Statement of Interest, the opposition thereto, and the record of the case, the Court concludes that the pending claims against the individual defendants sued in their personal capacities should be dismissed.

---

[1] Plaintiff's claims against the Socialist People's Libyan Arab Jamahiriya, the Libyan External Security Organization, Muammar Qadhafi in his official capacity as Libya's head of state, and the six Libyan government officials in their official capacities were previously dismissed. *See* Order of July 2, 2009 [Dkt. # 57] at 2.

## I.  BACKGROUND

On August 4, 2008, the Libyan Claims Resolution Act was signed into law.  It was enacted in order to "provide fair compensation to all nationals of the United States who have terrorism-related claims against Libya through a comprehensive settlement of claims by such nationals pursuant to an international agreement between the United States and Libya as a part of restoring normal relations between Libya and the United States."  Pub. L. No. 110-301, § 3, 122 Stat. 2999, 2999 (2008).  As part of that settlement, the Act eliminates private causes of action against Libya and its officials.  *See id.* § 5(a)(1)(B), 122 Stat. at 3000–01.

On August 14, 2008, shortly after the passage of the Act, Libya and the United States signed an agreement to "terminate permanently all pending suits . . . and . . . preclude any future suits" in the courts of the United States or Libya arising from terrorist acts that occurred prior to June 30, 2006.  *See* Claims Settlement Agreement Between the United States of America and the Great Socialist People's Libyan Arab Jamahiriya, art. I (Aug. 14, 2008).  The Claims Settlement Agreement terminates all suits against either country "or its agencies or instrumentalities, or against officials, employees, or agents thereof (whether such officials, employees, or agents are sued in an official and/or personal capacity)."  *Id*.

After the United States government received the necessary settlement funds, President George W. Bush signed an Executive Order stating that "[c]laims of United States nationals within the terms of Article I . . . are settled according to the terms of the Claims Settlement Agreement."  Exec. Order No. 13,477, § 1 (2008).  The Order further declares that "[n]o United States national may assert or maintain any claim within the terms of Article I in any forum, domestic or foreign, except under the procedures provided for by the Secretary of State" and that

"[a]ny pending suit in any court . . . by United States nationals . . . coming within the terms of Article I shall be terminated." *Id*. § 1(a)(i– ii).

On April 21, 2009, the United States filed a "Statement of Interest" [Dkt. # 54] in this case arguing that the Libyan Claims Resolution Act eliminated this Court's jurisdiction over plaintiff's claims.  In light of the United States' submission, the Honorable Henry H. Kennedy, Jr. ordered plaintiff to show cause why this case should not be dismissed for lack of subject-matter jurisdiction [Dkt. # 55].  Plaintiff filed its response [Dkt. # 56], contending that the Act did not require the Court to dismiss the claims against the individual defendants in their personal capacities.  On July 2, 2009, Judge Kennedy dismissed the claims against the Great Socialist People's Libyan Arab Jamahiriya, the Libyan External Security Organization, and the individual defendants in their official capacities, but agreed with plaintiff that the Act did not require dismissal of the claims against the individual defendants in their personal capacities.  *See* Order of July 2, 2009 [Dkt. # 57].  The United States now asks for reconsideration of that ruling.[2]

## II. ANALYSIS

The United States makes two arguments as to why this Court should dismiss plaintiff's claims against the individual defendants in their personal capacities.  First, it argues, as it did in its original Statement of Interest, that the terms of the Act deprive plaintiff of a cause of action against the individual defendants in their personal capacities.  With regard to that argument, the Court stands by the ruling that the Act does not, by itself, require dismissal of these claims.  *See*

---

[2]   Although the United States's Supplemental Statement of Interest is not titled as a motion, it requests reconsideration of the order of July 2, 2009.  Accordingly, the Court will treat the United States' filing as a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e).

N/A

Order of July 2, 2009.

Next, the United States contends that the Claims Settlement Agreement and the Executive Order mandate dismissal of the claims against the individual defendants in their personal capacities. It points to the terms of the Claims Settlement Agreement, which expressly contemplates the settlement of claims against Libyan officials sued in their personal capacities. *See* Claims Settlement Agreement, art. I (terminating all lawsuits against Libya "or against officials, employees, or agents thereof (*whether such officials, employees, or agents are sued in an official and/or personal capacity*)") (emphasis added)); *see also* Exec. Order No. 13,477, § 1 ("All claims within the terms of Article I of the Claims Settlement Agreement . . . are settled."). In response, plaintiff argues, in effect, that the President did not have the power to settle such claims without explicit congressional authorization. This objection is unavailing.

It is "'indisputable'" that "'the President's control of foreign relations includes the settlement of claims.'" *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 415 (2003) (quoting *United States v. Pink*, 315 U.S. 203, 240 (1942) (Frankfurter, J., concurring)); *see also Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 235 (D.C. Cir. 2003) ("The authority of the President to settle claims of American nationals through executive agreements is clear."). Although most of the cases establishing this power have involved claims against foreign governments, *see, e.g.*, *Dames & Moore v. Regan*, 453 U.S. 654, 679–83 (1981); *United States v. Pink*, 315 U.S. 203, 230 (1942); *United States v. Belmont*, 301 U.S. 324, 330–31 (1937), the Supreme Court has said that its claims-settlement cases endorse "the making of executive agreements to settle civil claims between American citizens and . . . foreign nationals." *Medellin v. Texas*, 552 U.S. 491, 531 (2008); *see also Garamendi*, 539 U.S. at 415–16 (upholding the settlement of claims against

foreign corporations).  This is a sensible interpretation of well-established doctrine, because "[w]hile a sharp line between public and private acts works for many purposes in the domestic law, insisting on the same line in defining the legitimate scope of the Executive's international negotiations would hamstring the President in settling international controversies."  *Garamendi*, 539 U.S. at 416.  The Court must therefore reject plaintiff's argument that the President lacked the authority to settle claims against Libyan officials in their personal capacities.

The purpose of the Claims Settlement Agreement was to "further the process of normalization of relations" between the United States and Libya.  *See* Claims Settlement Agreement at 1; *see also* Exec. Order No. 13,477 (same).  The agreement therefore fell squarely within the President's foreign relations powers, and President Bush had the authority to settle the claims of American nationals against Libya and its officials without any authorization from Congress.  *See Dames & Moore*, 453 U.S. at 679 (noting the "longstanding practice of settling [] claims by executive agreement" when such claims are "sources of friction" between two sovereigns); *Pink*, 315 U.S. at 230 (upholding the President's prerogative to settle claims where such claims posed an "obstacle" to the "rehabilitation of relations between this country and another nation").  He did so.  This Court must therefore dismiss the present action.

### III. CONCLUSION

Because the Claims Settlement Agreement and the Executive Order operate to terminate suits against Libya's "officials, employees, [and] agents . . . sued in [their] . . . personal capacity," the Court must dismiss the claims against the individual defendants in their personal capacities for lack of subject matter jurisdiction. An appropriate order accompanies this memorandum.

                                            Royce C. Lamberth
                                            Chief Judge
                                            United States District Court
                                                for the District of Columbia

Date: December 14, 2011